[Civ. No. 44210. Second Dist., Div. Four. Mar. 24, 1975.]

ORION INSURANCE COMPANY, LIMITED, et al, Plaintiffs and Respondents, v.
FIREMEN'S INSURANCE COMPANY OF NEWARK,
NEW JERSEY, Defendant and Appellant.

**COUNSEL**

Lillick, McHose, Wheat, Adams & Charles, David L. Hayutin and David Brice Toy for Defendant and Appellant.

Gibson, Dunn & Crutcher and Fred F. Gregory for Plaintiffs and Respondents.

**OPINION**

**KINGSLEY, J.**—This is an action between two insurance carriers to determine which one shall bear the ultimate loss attributable to the loss of cargo on a ship that sank at sea.

The *SS Barcelona* was owned by Casa Blanca Steamship Company; it was chartered, on a bare boat charter, to Westhampton Trading Company. (These two companies being hereinafter referred to as the "owners.") Defendant insured the owners under policies the meaning of which is the chief issue in this case. The vessel was thereafter time chartered to Lineas Navieras de Centro America, S.A. (hereinafter the operator). The operator was insured by plaintiff.

On January 3, 1963, the *Barcelona* sank at sea, resulting in the total loss of vessel and cargo. The shippers brought suit against the owners and the operator, in the United States District Court for Florida, recovering judgment against all three companies, with a provision that, because the loss was due to the unseaworthiness of the vessel, the operator had a right of indemnity against the owners.[1] Thereafter, the shippers sued plaintiff in California on the Florida judgment and recovered judgment which plaintiff has paid. Plaintiff attempted, in the California suit, to cross-complain against defendant but the cross-complaint was dismissed as premature, on the theory that plaintiff, under the terms of the Florida judgment, has no claim against the owners or its insurance carrier until plaintiff had actually paid the shippers.[2]

Plaintiff then brought the present action, contending that, since it now has a right of indemnity from the owners, it is subrogated to the owners' rights against defendant. The trial court, after extended briefing and argument, ruled in favor of plaintiff and granted it summary judgment. For the reasons set forth below, we affirm.

Although broken down under several heads in appellant's brief, the issues before us are two: (1) Was the policy issued by defendant to the owners one of indemnity or one of liability; and (2) was the action barred by a one-year limitation contained in the policy.

[1]The pertinent portion of the Florida decree, after giving a joint and several judgment in favor of the shippers and against all three steamship companies, provided that "Lineas Navieras De Centro America, S.A., do have and recover from Casa Blanca Steamship Corp. of Panama and Westhampton Trading Company, Inc., jointly and severally, any and all sums of money that the said Lineas Navieras de Centro America, S.A., may be required to pay the Libelants [shippers] or either of them under this decree with interest thereon from the date of any such payments together with its costs of the instant suit;...."

[2]No question as to the correctness of that ruling (long since final) is raised in the case at bench.

## I

 We think that, under the circumstances of this case, defendant cannot now rely on the one-year clause. When plaintiff sought, in the first California action, to join defendant by way of cross-complaint, defendant urged successfully that plaintiff had no cause of action until it had actually paid the shippers for their loss. That payment was on January 11, 1971, and this action was filed on April 14, 1971. Defendant cannot now take a position against plaintiff in exact contradiction to the position it urged in the first California suit.[3]

## II

 We now come to the central issue in this appeal, whether the policy issued by appellant was one of indemnity for loss or for liability. There is no question that if the policy was one of indemnity for liability, appellants' duty to pay arose as of the date of the entrance of the Florida judgment; conversely, if appellant had contracted to indemnify for loss, its duty to pay would only be to reimburse the insured for money it had expended in payment of the judgment. It is conceded that the insured has not paid and will never pay anything on the Florida judgment. Thus, the respondent in this action will prevail only if it can satisfy us that the policy issued by appellant to the owners was one that indemnified for liability.

Both sides agree that the controlling language is to be found in the protection and indemnity clauses of the policy. These provisions read in pertinent part:

"RISKS COVERED

"1. The assured is protected and indemnified as shipowner in respect of liabilities and expenses which he shall have become liable to pay and shall have in fact paid in respect of the vessel named herein for the following:

". . . . . . . . . . . . . . . . . . . .

"(h) Loss of or damage to or in connection with cargo or other

---

[3]Under the view we take of defendant's position, we need not engage in the intriguing task of attempting to construe the time limitation clause of the policy. It is clear that the present action was brought well within one year after plaintiff, on defendant's theory, first had an enforceable cause of action. Defendant can ask no more.

property. . . to be carried, or which has been carried on board the vessel named herein."

The provision also covered twelve other risks, four of which are expressly referred to as "expenses."[4] Typically, they involve situations in which the liability of the insured would be in relatively small amounts and are of the sort that a vessel owner could reasonably be expected to pay as part of day-to-day operating expenses as incurred.

The question to be answered, then, is whether the limiting phrase "which he shall have become liable to pay and shall have in fact paid" applies strictly to "expenses" to the exclusion of "liabilities" as the respondent argues, or whether the phrase is to be applied to the two words conjunctively as appellant argues. Both appellant and respondent have supplied detailed briefs as to the manner in which insurance policies should generally be construed, but neither side has cited a case which construes the exact language of this policy. Our research has revealed, however, the case of *Saunders* v. *Austin W. Fishing Corp.* (1967) 352 Mass. 169 [224 N.E.2d 215], which is in point.

In *Saunders* defendant Austin W. owned a fishing vessel of which

---

[4]"(b) Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life, or personal injury to, or illness of any member of the crew of the vessel named herein or any other person. Liability hereunder shall also include burial expenses not exceeding Two Hundred Dollars ($200), or its equivalent in other currency, when necessarily and reasonably incurred by the Assured for the burial of any seaman.

"Port charges incurred solely for the purpose of landing an injured or sick person shall be allowed also the net loss to owners in respect of bunkers, insurance, stores and provisions as the result of such deviation.

"(c) Repatriation expenses of any members of the crew of the within named vessel necessarily and reasonably incurred in case of wreck or abandonment of the vessel or under statutory obligations, excepting such liability and expenses as arise out of or ensue from the termination of any agreement in accordance with the terms thereof, or by mutual consent, or by sale of the vessel named herein, or by other act of the Assured. Wages shall be included in such expenses when payable under statutory obligations during unemployment due to the wreck or loss of the vessel named herein.

"(k) Extraordinary expenses in excess of Two Hundred Dollars ($200), or its equivalent in other currency, incurred in cases of outbreak of plague or other contagious disease for disinfection of the insured vessel or persons on board her, or for quarantine, (not being the ordinary expenses of loading or discharging, nor the wages and/or provisions of crew or passengers). In case of a vessel being chartered or (not being under contract) ordered to proceed to a port where it is or should be known that she will be subjected to quarantine, the Assured shall have no benefit under this clause.

"(l) Expenses incurred in resisting any unfounded claim by the Master or crew or other persons employed on the vessel named herein, or in prosecuting such persons in case of mutiny or other misconduct."

Saunders was one of the crew members.[5] During the operation of the vessel, plaintiff Saunders was injured through the negligence of the boat owner and/or by the unseaworthiness of the vessel. Saunders sued the owner for his injuries and obtained a judgment against him. Although he attempted to satisfy the judgment through the issuance of an execution, he was unsuccessful. The defendant boat owner did, however, hold a policy of protection and indemnity insurance. Saunders brought suit, therefore, against the insurance company to reach and apply the proceeds of the policy.

The insurance policy clause in *Saunders* beginning with "Risks covered" is identical to the policy under review in the case at bench. (*Saunders, supra,* 224 N.E.2d at p. 217). And the interpretation of the policy argued for by the insurance company in *Saunders* is identical to that urged by appellant here, that this clause makes this a policy of indemnity for loss and not for liability. The highest court in Massachusetts said: "There can be no doubt that if the policy alone is to be considered [the insurance company] should prevail. The quoted words impose liability on [the insurance company] only if the assured has paid the loss covered by the policy." (*Saunders, supra,* at p. 217). The language just quoted from *Saunders* is, however, dictum. The Massachusetts court made no analysis of the policy provision beyond the brief conclusion quoted by us. The actual holding of the case was that, assuming the interpretation of the policy as the insurer contended, it violated a Massachusetts statute (Mass. Gen. Laws, ch. 175, § 112) that prohibited the issuance of a policy which indemnified an insured only for actual loss and not for liability.

Two California cases involve the problem now before us, but in both the policy language was much more specific. In *Hebojoff* v. *Globe Indemnity Co.* (1917) 35 Cal.App. 390, 391 [169 P. 1048] the provision read as follows: " 'No action for the indemnity against loss provided for in [the] insuring agreement. . .shall lie against the company except for reimbursement of the amount of loss actually sustained and paid in money by the assured in full satisfaction of a judgment duly recovered against the assured after trial of the issue. . . .' " In light of that express language, the court held that the insured could not recover on the policy unless and until he had paid the judgment.

In *Treloar* v. *Keil & Hannon* (1918) 36 Cal.App. 159, 161 [171 P. 823]

---

[5]Actually, this opinion dealt with two cases, one involving plaintiff Saunders, and one involving a Mr. Tucker. But as the issues on appeal were identical, the Massachusetts court considered the cases together.

the policy provision read: " '[N]o action shall lie against this company for any loss or expense under this policy unless it shall be brought for loss or expense actually sustained and paid in consequence of a final judgment. . . .' " Admittedly, in that case, not only had the insured paid nothing but no final judgment against it had been recovered. The case, therefore gives us no assistance in resolving the problem here presented.

As distinguished from the clear language of the two California cases just discussed, in the case at bench the policy language is susceptible of two interpretations. It is possible to interpret that language as applying the "payment" clause only to those risks expressly denominated as "expense," such as wages, transportation of seamen, repairs, *et cetera.* There are practical reasons for treating such "expense" items differently from the kind of liabilities which result from damage suits for loss of cargo, loss of life, *et cetera.* The "expense" items, as we have said above, are normally small in amount and of a kind that an insured usually would pay in the regular course of business as an ordinary operating expense. But liabilities such as are here involved normally will be substantial in amount and will be paid only after litigation and judgment. To expect the insured to pay the "expense" items before recovery from the insurer protects the insurer against fictitious claims and imposes no impossible financial obligation on the insured. But to require the insured to pay the substantial amounts involved in suits for (as here) loss of cargo or for death or personal injury could, and in many instances would, require the insured to sell or hypothecate all of its assets and then seek to recover from the insurer the money necessary to buy them back or to release them from liens. Such a rule would defeat an important aspect of the protection which an insured would reasonably expect and need. A policy of insurance should be construed, if possible, according to the reasonable expectation of the insured. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].)

So interpreted, the policy herein involved was, in the terms used by the parties, one of "liability" insurance, insofar as the risk herein involved is concerned.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1975.