**Ali Galeb AHMED et al., Plaintiffs-Appellants,**

v.

**AMERICAN STEAMSHIP MUTUAL PROTECTION & INDEMNITY ASSOCIATION et al., Defendant-Appellee.**

**No. 78–1368.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1980.

Decided March 6, 1981.

Michael G. Briski, Boccardo, Blum, Lull, Niland & Bell, San Jose, Cal., for plaintiffs-appellants.

Louis J. Gusmano, New York City, argued, for defendant-appellee; Jack G. Knebel, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., on brief.

Before HUG, SCHROEDER, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants are twenty-six seamen who, after obtaining default judgments against their employer shipping companies for damages for personal injuries, directly sued appellee, the insurance carrier for all the employers. The district court granted summary judgment in favor of the defendant carrier on the ground that New York Insurance Law § 167(4) precludes appellants' direct action suit against the insurer. We affirm in part and remand in part.

Plaintiffs-appellants are injured merchant seamen who served on vessels owned by three companies, collectively referred to as Amercargo. Defendant-appellee, American Steamship Owners Mutual Protection & Indemnity Association, is a non-profit mutual insurance association engaged in the business of providing marine protection and indemnity insurance to member shipowners. Appellee insurance carrier insured Amercargo during 1969 and 1970 against risks of loss for personal injuries sustained by crew members in the course of their employment aboard Amercargo's vessels. Each of the appellants sustained personal injuries while working for Amercargo during the years covered by the policies.

Appellants filed suit against Amercargo in the San Francisco Superior Court to recover damages for personal injuries. Under the terms of the insurance contract, Amercargo handled the defense of the suit. Appellee insurance carrier retained the right to supervise the litigation but declined to exercise that right. In 1973, a default judgment was entered in favor of each appellant and against Amercargo.

Appellants were unable to satisfy their judgments because of Amercargo's intervening insolvency. In 1973, appellants submitted their unsatisfied judgments as creditors' claims in Amercargo's bankruptcy proceedings in the United States District Court for the Southern District of New York. None of the judgments were satisfied. The judgments amounted to $577,015.54; Amercargo's policy had a deductible of $190,000.00.

Appellants then commenced this direct action suit in the United States District Court for the Northern District of California against appellee, Amercargo's insurer. On an agreed statement of facts, the district court held that: (1) New York law

applied to this action; (2) the insurance policies were indemnification rather than liability policies; and (3) New York Insurance Law § 167(4), which authorizes direct action suits against insurers by injured third parties, nevertheless precludes direct action suits based on marine indemnity insurance contracts. Accordingly, the court granted summary judgment in favor of the insurance carrier. *Ali Galeb Ahmed v. American Steamship Mutual Protection & Indemnity Association,* 444 F.Supp. 569 (N.D.Cal.1978). This appeal followed.[1]

Appellants' first contention is that the district court erred in concluding that the insurance policy at issue is a policy of indemnification rather than one of liability. The relevant clause of the insurance policy reads as follows:

> The Association agrees to indemnify the assured against any loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the assured is the owner . . . of the insured vessel and which shall result from the following liabilities, risks, events, occurrences and expenditures
> . . . .

Relying on *Liman v. American Steamship Owners Mutual Protection and Indemnity Association,* 299 F.Supp. 106 (S.D.N.Y.), *aff'd* 417 F.2d 627 (2d Cir. 1969), *cert. denied,* 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970), and *Cucurillo v. American Steamship Owners Mutual Protection and Indemnity Association,* 1969 A.M.C. 2334 (Sup.Ct.1969), the district court found that the insurance policies are policies of indemnification, i. e., policies under which the insurer's obligation to pay does not arise until after the insured suffers an actual monetary loss.

▪ Although Judge Sweigert was not bound by the *Cucurillo* and *Liman* holdings,[2] his reliance upon them was well-founded as *Cucurillo* accurately set forth a summary of relevant New York law. Moreover, *Cucurillo* and *Liman* dealt with policies identical to the policy at issue here.[3] Thus the district court was correct in ruling that the policies are indemnification policies.

▪ Appellants' second contention is that the district court erred in concluding that New York Insurance Law § 167(4) bars appellants' direct action suit against the insurer.

The district court opinion succinctly discusses New York law with respect to direct action suits and we need not repeat that discussion. *See* 444 F.Supp. at 572. Although section 167 permits injured parties to assert their unsatisfied claims directly against insurance carriers of insolvent insureds, that section does not apply to all types of insurance policies. Section 167 does apply to both indemnity and liability policies, *175 East 74th Corp. v. Hartford Accident & Indemnity Co.,* 72 A.D.2d 521, 420 N.Y.S.2d 902 (App.Div.1979), but section 167(4), read in conjunction with sections 112(2)(c) and 46(21), precludes direct actions suits based on marine protection

---

1. Appellants do not appeal the district court's ruling that New York law governs this diversity action.

2. In applying New York law, we follow, as did the district court, the guidelines established by the Supreme Court:

    [T]he State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782,

18 L.Ed.2d 886 (1967), *quoting Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

3. We decline to accept appellants' invitation to hold, on the authority of *Orion Insurance Co. v. Firemen's Insurance Co.,* 46 Cal.App.3d 374, 120 Cal.Rptr. 222 (1975), *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230 (5th Cir. 1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), and *Coleman v. Jahncke Service, Inc.,* 341 F.2d 956 (5th Cir. 1965), that this policy is one of liability. *Liman* and *Cucurillo* interpret the law of New York, and, therefore, provide reliable guidance.

and indemnity insurance. *See* N.Y. Ins. Law §§ 167(4), 112(2)(c), and 46(21).[4]

Judge Sweigert found appellees' marine protection and indemnity policy clearly within the ambit of section 167(4) and therefore exempt from the direct action statute. We agree.

Appellants' final contention is that because section 167(4) exempts marine indemnification policies from direct actions, but allows direct actions based on other types of indemnification policies, the statute violates the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Art. 1, § 11 of the Constitution of New York. According to appellants, this disparate treatment bears no rational relationship to the purpose of the direct action statute which is to extend the benefits of insurance coverage to injured parties when an insolvent insured cannot satisfy a judgment.

■■■■ This equal protection argument was not presented to the trial court nor was evidence introduced that could support findings by the trial court on the issue. Ordinarily we decline to consider an issue not raised below. That rule, however, is not a "jurisdictional limitation, but merely . . . a rule of practice." *Krause v. Sacramento Inn*, 479 F.2d 988, 989 (9th Cir. 1973). "Relaxation of this rule is sometimes appropriate in appeals wherein there are significant questions of general impact or when injustice might otherwise result." *Id.* Here, though we might be inclined to consider the equal protection issue, we are precluded from doing so by the absence of an appropriate factual record. This being the case,

remand for findings of fact and for further development of the legal arguments is permissible. *Cf. United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) (in light of recent change in the law, remand for further findings of fact may be required to develop arguments).

We believe such a remand, limited solely to consideration of appellants' equal protection argument, is appropriate here. It is a revered canon of maritime jurisprudence that "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." *Moragne v. States Marine Lines*, 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970), *quoting with approval, The Sea Gull*, 21 F.Cas. 909, 910 (No. 12,578) (C.C.Md.1865). *Accord, American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Moreover, "[a]dmiralty jurisprudence has always been inspirited with a 'special solicitude for the welfare of those men who under[take] to venture upon hazardous and unpredictable sea voyages.' " *American Export Lines, Inc. v. Alvez*, 446 U.S. at 284, 100 S.Ct. at 1679, *quoting Moragne v. State Marine Lines*, 398 U.S. at 387, 90 S.Ct. at 1780. We recognize that this matter is not substantively governed by a federal admiralty rule, and that state law therefore applies to the regulation of marine insurance indemnity contracts. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).[5] Nevertheless, although state

---

4. Section 167(4) reads as follows:

The provisions of this section shall not apply . . . to the kinds of insurance set forth in paragraph (c) of subsection two of section one hundred twelve.

Section 112(2)(c) provides:

(c) marine insurance of the following kind or kinds . . .:

(1) insurance against perils of navigation . . .;

(2) insurance in connection with ocean going vessels against any of the risks specified in paragraph 21 of section 46.

Section 46(21) provides:

"marine protection and indemnity insurance," meaning insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair, or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person.

5. It appears that section 167(4) may have been enacted because of uncertainty concerning the applicability of state direct action statutes to

law applies substantively, we cannot forget our obligation to treat merchant seamen with a "special solicitude." Accordingly, we allow appellants an opportunity to develop their arguments and to show that neither an established nor inflexible rule, consistent with constitutional principles, forecloses them from obtaining satisfaction of their judgments from appellee insurance carrier. We therefore affirm the district court on the substantive issues raised below and remand for further proceedings on the equal protection issue consistent with this opinion.

AFFIRMED IN PART AND REMANDED IN PART.

maritime law. *See Liman v. American Steamship Owners Mutual Protection and Indemnity Association*, 299 F.Supp. 106, 109 n.1 (S.D. N.Y.) *aff'd* 417 F.2d 627 (2d Cir. 1969), *cert. denied*, 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970). Whether that uncertainty prompted the enactment of the exception, and if so, whether that uncertainty is still a valid basis for the exception could be relevant in analyzing the equal protection issue. Subsequent to the enactment of section 167(4), the Supreme Court held that state law applies to the interpretation of marine insurance contracts. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co., supra*. Thus one might conclude that earlier uncertainty over the applicability of state law to maritime cases would not now provide a rational basis for the exemption of maritime indemnity policies from direct action suits.