Ralph F. MILLER, Plaintiff,

v.

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY COMPANY, Defendant.

No. 78 Civ. 5978.

United States District Court,
S. D. New York.

March 11, 1981.

Kirlin, Campbell & Keating by Louis J. Gusmano, New York City, for plaintiff.

Scribner, Glanstein & Klein by Arthur Z. Schwartz, New York City, for defendant.

3.  *Cf. Hill v. Aro Corp.*, 275 F.Supp. 482 (N.D. Ohio 1967).

**1048**

MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Plaintiff is a seaman who suffered injuries on the vessel *American Forwarder* in November 1970. At that time injuries to employees on the vessel were covered by an insurance policy issued by defendant to Amercargo, Inc., the vessel owner. The policy was cancelled on December 20, 1970. Plaintiff sued Amercargo, Inc., for damages during 1971, and obtained a default judgment in December 1973; an inquest was held and damages were set at $19,136.00, plus interest. Although the defendant insurer had the right to appear in behalf of Amercargo, it did not do so. Amercargo has been financially insolvent for some time, and nothing has been paid on the default judgment.

Defendant has moved for summary judgment, arguing that the policy involved gives no claims to any person other than the insured, and that the governing law of New York does not permit a direct action against the insurer because the insurance contract involved is one that relates to maritime matters. These arguments were upheld by Judge Sweigert in *Ahmed v. American Steamship Owners Mutual Protection and Indemnity Association, Inc.*, 444 F.Supp. 569 (N.D.Cal.1978), which involved an indistinguishable insurance contract and the same vessel owner, Amercargo. Judge Sweigert's disposition of all these issues was sustained on appeal, although the appellate court remanded for further consideration of plaintiff's equal protection argument. *Ahmed v. American Steamship Mutual Protection & Indemnity Association*, 640 F.2d 993 at 996, No. 78–1368, slip op. at 5 (9th Cir. March 6, 1981).

Plaintiff contests the view that the insurance contract on which he seeks to recover was an indemnity policy, rather than one of liability. Under an indemnity policy the insurer would be responsible only for payments actually made by the insured, a circumstance that can no longer occur in this case since the owner is bankrupt. Under a liability policy the insurer would be responsible for any liability incurred by the insured while the policy was effective; in this case it is stipulated that the owner's liability to plaintiff was incurred while the policy was in effect. *See generally Stuyvesant Insurance Co. of New York v. Nardelli*, 286 F.2d 600 (5th Cir. 1961); 11 Couch on Insurance § 44:4 (2d ed. 1963).

The relevant provision of the policy states that: "The Association agrees to indemnify the Assured against loss, damage or expense which the assured shall become liable to pay and shall pay by reason of the fact that the Assured is the owner. . . ." Plaintiff contends that defendant's agreement "to indemnify" the insured does not establish that the contract is one of indemnity, for the word indemnify is ambiguous and used in both types of policies. The phrase "which the assured shall become liable to pay *and shall pay*," plaintiff asserts, refers only to the *expenses* the insured pays, and not to any "loss" or "damage."

Courts have occasionally strained to construe the language of insurance policies as policies of liability rather than of indemnity. *E. g., Orion Insurance Co. Ltd. v. Firemen's Insurance Co. of Newark*, 46 Cal. App.3d 374, 120 Cal.Rptr. 222 (1975); *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230 (5th Cir. 1969). The policy in this case, however, is clearly one of indemnity and would be construed as such under New York law. *See Hansen v. Continental Insurance Co.*, 262 N.Y. 136, 186 N.E. 420 (1933); *Cucurillo v. American Steamship Owners Mutual Protection & Indemnity Association, Inc.*, 1969 A.M.C. 2334 (Sup.Ct. N.Y. County 1969); *Burke v. London Guarantee & Accident Co.*, 47 Misc. 171, 93 N.Y.S. 652 (Sup.Ct. Kings Cty.1905), *aff'd mem.*, 126 A.D. 933, 110 N.Y.S. 1124 (1908), *aff'd mem.*, 199 N.Y. 557, 93 N.E. 1117 (1910). The very policy at issue in this case was conceded by the parties to be one of indemnity in *Liman v. American Steamship Owners Mutual Protection & Indemnity Association*, 299 F.Supp. 106, 107 (S.D.N.Y.), *aff'd per curiam*, 417 F.2d 627 (2d Cir. 1969), *cert. denied*, 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970).

In contending that the policy is one of liability, plaintiff relies upon the manner in which the Fifth Circuit has construed insurance contracts in applying Louisiana statutes. The Fifth Circuit decisions are conclusory, however, and all ultimately refer back to the decision in *Cushing v. Maryland Casualty Co.*, 198 F.2d 536 (5th Cir. 1952), *reversed on other grounds*, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954). That opinion reflects a fundamental misunderstanding, or a determination to ignore, the difference between liability and indemnity insurance. *See* 198 F.2d at 538. It is unpersuasive. Judge Pregerson's decision for the Ninth Circuit in *Ahmed, supra,* is far more convincing.

■ Plaintiff's contention that New York's courts have adopted a policy of protecting the intended beneficiaries of insurance policies is beside the point. If the insurance policy is one of indemnity, New York common law precludes a suit even by the insured, until payment has been made. The seaman would have been deemed out of privity under New York law prior to the adoption of the direct action statute. *See, e. g., Beyer v. International Aluminum Co.,* 115 A.D. 853, 854–55, 101 N.Y.S. 83, 84; *accord, Hansen v. Continental Insurance Co.,* 262 N.Y. 136, 186 N.E. 420 (1933).

■ Irrespective of how the policy is construed, however, it remains a marine insurance policy. New York law provides for a direct action against insurers on both liability and indemnity policies, but no direct action is allowed on any marine insurance policy, whether it is one of liability or indemnity.[1] Plaintiff's argument to the contrary ignores the language and purpose of the statutory exception for such insurance contracts. The exception was consciously made by the New York legislature to eliminate a perceived competitive disadvantage to which New York's marine insurers were placed by the direct action statute.[2]

Here, again, plaintiff relies upon Fifth Circuit decisions construing Louisiana's direct action statute. Apart from the difficulty already expressed concerning those decisions, the Louisiana statute differs materially from New York's. First, the direct action statute in Louisiana is much broader than the New York law. It provides for direct action regardless of the financial condition of the insured, not merely upon the insured's insolvency. La.Rev.Stat.Ann. § 22:655. This reflects a very strong policy in Louisiana in favor of direct actions— much stronger than the policy in New York. Furthermore, the Louisiana exception for marine accident insurance from the general rule regarding direct actions is so broad as

1. New York Insurance Law § 167 allows direct action suits in certain circumstances, but § 167(4) establishes specific exceptions to the operation of the statute: "The provisions of this section shall not apply to . . . the kinds of insurance set forth in paragraph (c) of subsection two of section one hundred twelve." Insurance Law § 112(2)(c) refers to: "(c) marine insurance of the following kind or kinds, . . . (2) Insurance in connection with ocean going vessels against any of the risks specified in paragraph twenty-one of section forty-six." Insurance Law § 46(21) specifies: "21. 'Marine protection and indemnity insurance,' meaning insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person."

2. The legislative history of § 167(4) reflects the specific purpose of the statutory exception. The bill jacket to the amendment (S.1944, ch. 507, 1940) contains a memorandum to the Governor from the State Superintendent of Insurance which reads in part: "[I]t is felt that the admitted companies writing marine insurance as defined in paragraph (c) of subsection 2 of § 112 of the Insurance Law are at a disadvantage in competing with unauthorized companies on such business if they are compelled to set forth in their policies the specific provisions contained in § 167." The bill jacket also includes a memorandum to the Governor from his then-Counsel, Nathan R. Sobel, which states: "This bill seeks to exempt marine insurance companies from the necessity of including all of [the § 167] standard provisions in their policies. The principal reason for such exclusion is that such companies cannot compete with authorized [sic] companies such as Lloyds whose policies do not have to contain these standard provisions."

to be vague. The statute provides simply: "The applicable provision of this Part shall apply to insurances other than ocean marine and foreign trade insurances." *Id.* § 22:611. The New York exception applies expressly to marine insurance for risks due to injury to the person. *See* N.Y.Ins.Law § 46(21).

Given the clear limitation in New York's direct action statute, defendant's motion for summary judgment must be granted unless the applicable statutes are superseded by federal law.

■ Plaintiff's contention that the New York statute is invalid as a denial of equal protection is meritless. Neither the state nor the federal equal protection clause would treat a legislative classification as "suspect" merely because it affects seamen. Congress may have extended protection to seamen in the Jones Act, but seamen do not constitute an insular and disadvantaged group warranting special constitutional protection. Furthermore, the statutory classification involved in this case may affect seamen adversely as compared to other laborers doing analogous work, but it applies to all forms of marine insurance, not merely to insurance for personal injuries.

The argument that the New York statute "favors" marine insurers over other insurers is speculative, for the economic consequences of the law have not been alleged or proved; whether insurers make a higher profit in the absence of a direct action statute depends on the rates negotiated as a result of the limitation of liability thereby created. In any event, the legislative history of the particular statute challenged here makes clear that a rational basis was relied upon in excepting marine insurance from the direct action rule. The bill jacket reflects that the statute was intended to enable insurers doing business in New York to compete with those selling insurance in other jurisdictions. That this consequence resulted from "a concerted effort by the American Institute of Marine Underwriters to obtain passage of a 'special interests' bill," as plaintiff contends, Plaintiff's Memorandum of Law at 45–46, would establish only that the challenged law shares a characteristic common of most laws passed by all American legislatures.

Plaintiff's other argument, advanced repeatedly but in vague terms, is that federal statutory law requires that seamen be afforded a direct action remedy against marine insurers of bankrupt assureds.

In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 314, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955), the Supreme Court held that a state law governing an aspect of marine insurance would be permitted to control in the absence of either an "established federal admiralty rule governing" the issue involved or a sufficient basis for creating such a rule.

■ Here, as in *Wilburn Boat,* no Act of Congress exists that could be read to require direct actions against insurers in all seaman injury cases, or in cases brought in jurisdictions with direct action statutes that except marine insurance. Nor has any such rule been judicially created. Plaintiff has cited no federal decision that limits the power of vessel owners and insurers to contract for indemnity (as opposed to liability) insurance in connection with seaman injuries. No judicial decision mandates direct actions against insurers by seamen claiming injuries, either in all jurisdictions or in jurisdictions that permit direct action in areas other than marine insurance. What plaintiff requests in this case, albeit obscurely, is that the federal courts fashion a federal admiralty rule that would afford him relief. *Cf. Ahmed, supra.*

*Wilburn Boat* remains the starting point for any effort to determine whether the federal courts should establish an admiralty rule governing aspects of maritime insurance. The principles postulated by Justice Black in that case, though favorable to the injured party there, are unfavorable to the plaintiff here. In *Wilburn Boat* the Court held that "control of all types of insurance companies and contracts has been primarily a state function since the State came into being.... Not only courts, but Congress, insurance companies, and those insured

have all acted on the assumption that States can regulate marine insurance." 348 U.S. at 316–17, 75 S.Ct. at 371–72. In *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), Justice Black urged (for four dissenting Justices) that Louisiana's direct action statute be permitted to operate, even in the context of a limitation of liability proceeding: "The uniformity which the Admiralty Clause of the Constitution requires is limited to one indefinitely defined area—that involving 'the essential features of an exclusive federal jurisdiction.' *Just v. Chambers,* 312 U.S. 383, 391, 61 S.Ct. 687, 692, 85 L.Ed. 903. Except in instances falling clearly within this area states are free to make laws relating to maritime affairs." 347 U.S. at 430, 74 S.Ct. at 619 (dissenting opinion). Under so limited a standard, plaintiff's claim would necessarily fail, since he suggests no support for the view that direct actions for injured seamen are an essential feature of admiralty jurisdiction.

The difficulty with this conclusion is the existence, side-by-side with the views expressed by Justice Black, of the notion "that the preponderant body of maritime law comes from this Court and not from Congress," and that the admiralty clause generally requires nationwide maritime uniformity. *Wilburn Boat Co. v. Fireman's Ins. Co., supra,* 348 U.S. at 323, 75 S.Ct. at 375 (Frankfurter, J., concurring). The Court has in several cases since *Wilburn Boat* rejected state rules, both procedural and substantive, in favor of inconsistent federal rules. *See, e. g., Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953).

Defendant should find small comfort, however, in the roughly equal number of cases in which state rules have been upheld. *See, e. g., Goett v. Union Carbide Corp.,* 361 U.S. 340, 80 S.Ct. 357, 4 L.Ed.2d 341 (1960); *Hess v. United States,* 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); *The Tungus v. Skovgaard,* 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). The only thing that these cases have in common with those that impose a federal rule is that all involved plaintiffs seeking damages for personal injury or death, and in all of them the Court's decision resulted in victory for plaintiffs. Indeed, as Professors Gilmore and Black so astutely observe, the Court in one case, *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), "seems to have given the plaintiff the benefit of one maritime rule (against a state law rule which would have been fatal to his case) and of one state law rule (against a maritime rule which would also have been fatal to his case)." G. Gilmore & C. Black, The Law of Admiralty § 6–61, at 465 (2d ed. 1975).

Defendant cautions that seamen "cannot always win," *Castro v. Moore McCormack Lines, Inc.,* 325 F.2d 72, 75 (2d Cir. 1963), and that is true. Yet seamen and other personal-injury plaintiffs have been observed to "win" with such regularity that the guiding principle in these cases "is not so much a rule of federal supremacy as a rule that seamen are to have the advantage in any court of whatever rules of law, substantive or procedural, may be most favorable to them." G. Gilmore and C. Black, *supra,* § 6–61, at 467.

This result is not necessarily the product of unprincipled decision making. Seamen have been characterized as "wards of the admiralty courts." *See, e. g., Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 247–48, 63 S.Ct. 246, 251–52, 87 L.Ed. 239 (1942). *See generally* 1 M. Norris, The Law of Seamen §§ 502–03 (3d ed. 1970). Congress, through legislation such as the Jones Act, and the Supreme Court, in a series of decisions, have over the years formulated policies with respect to maritime personal injury litigation that are protective of seamen. These laws and rulings, moreover, are based upon the ample powers allocated to Congress and the federal courts by the Constitution, and upon the authority provided by the supremacy clause to override state rules that interfere with federal policy.

**1052**

Despite such authority, it would be improper, particularly for a District Court, to grant the relief plaintiff seeks, based upon the record presented here. To afford plaintiff relief, the federal courts would have to go far beyond construing the insurance policy at issue as one of liability rather than indemnity. New York's direct action statute, which expressly excepts marine insurance, would have to be ignored or modified by federal order. To disregard the law would require the federal courts to conclude that direct actions against insurers constitute a required aspect of marine insurance, thereby nullifying any attempt by the insurer and/or the insured to limit their liability in the event of insolvency. Alternatively, the federal courts would at least have to hold that, once a state allowed direct actions in some matters, it must allow them in seamen-injury cases.

Plaintiff refers to no authority that would support so unfavorable a view of indemnity insurance as to require federal courts to ignore clear efforts by parties to contract for such insurance. The extensive reliance upon indemnity insurance in maritime affairs requires that a party seeking drastic revision of the law explain in detail the practical consequences of a new rule that would severely limit or negate the use of such insurance. Nor is it clear that Congress and the federal courts favor direct action statutes in all contexts. True, a direct action for seamen would be favored in the absence of any conflicting policy; but Congress has expressed an overriding policy in favor of permitting vessel owners to limit their liability in certain circumstances. *See* 46 U.S.C. § 183; *Maryland Casualty Co. v. Cushing, supra,* 347 U.S. at 414, 74 S.Ct. at 610 (opinion of Frankfurter, J.). Moreover, plaintiff is unable to refer to any authority for imposing the use of direct actions upon all states in maritime matters, or upon states that allow such actions in areas other than maritime affairs. If any federal rule were to be fashioned, a uniform requirement would seem preferable to, and more principled than, a rule imposing direct actions in maritime affairs upon only those states that allow direct actions in other areas. But plaintiff has not even attempted to suggest the practical and conceptual difficulties that might result from any federal rule. Finally, even if plaintiff had presented a strong case for a federal rule and provided adequate guidance on its consequences, so significant a departure from accepted admiralty practice should be undertaken by Congress, or at least by the higher federal courts, on a more compelling record.

Defendant's motion for summary judgment is granted. Fed.R.Civ.P. 56(b). The Clerk will enter judgment in defendant's favor, with prejudice and costs.

SO ORDERED.