**WABCO TRADE COMPANY, DIVISION OF WORLD STANDARD EXPORT, LTD., Plaintiff,**

**v.**

**SS INGER SKOU and SS AMARYLLIS, their engines, boilers, etc., GCC Shipping Co., Ltd., d/b/a Constellation Line; Ove Skou R/A; Hydra Navigation Co., Ltd., and Constellation Navigation Inc., Defendants.**

**WABCO TRADE COMPANY, DIVISION OF WORLD STANDARD EXPORT, LTD., Appellee,**

**v.**

**GREAT AMERICAN INSURANCE COMPANY, St. Paul Fire and Marine Insurance Company, Highlands Insurance Company and Continental Insurance Company, Appellants.**

**No. 19, Docket 81–7149.**

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1981.

Decided Oct. 28, 1981.

Donald F. Connors, New York City (Donald T. Rave, Jr., Bigham, Englar, Jones & Houston, New York City, of counsel), for appellants.

Donald M. Kennedy, New York City (John A. V. Nicoletti, Donovan, Maloof, Walsh & Kennedy, New York City, of counsel), for appellee.

Before KAUFMAN and KEARSE, Circuit Judges, and PALMIERI,* District Judge.

PER CURIAM:

This is an appeal from a judgment entered upon an order by Judge Robert W. Sweet, holding that appellee WABCO Trade Co. ("WABCO") could recover a total amount of $278,160.40 from appellants Great American Insurance Co., St. Paul Fire and Marine Insurance Co., Highlands Insurance Co., and Continental Insurance Co. (the "insurers" or "insurance companies"). Since we believe that Judge Sweet improperly allowed WABCO to enforce by a direct suit against the insurers its prior judgment holding GCC Shipping Co., Ltd. ("GCC") liable to it, we reverse the judgment of the district court, 508 F.Supp. 94.

The relevant facts can be stated briefly. As charterer of the vessel INGER SKOU, GCC undertook to carry WABCO's cargo, consisting of four motor graders, from Charleston, South Carolina, to Beirut, Lebanon in October, 1975. Appellants had issued a "Broad Form Legal Liability" insurance policy to GCC which was in effect at the time of shipment. Because of political disturbances in Lebanon, the vessel discharged the graders at Piraeus, Greece. Contrary to WABCO's instructions to hold the graders at Piraeus, GCC shipped and delivered them to Beirut, where they were subsequently seized or lost.

WABCO then brought an action against GCC in the Southern District of New York, alleging breach of contract and tortious conversion. Acting within his admiralty and diversity jurisdiction, Judge Sweet, after a bench trial, ordered that WABCO recover $259,841.65 from GCC. Judgment was entered on November 9, 1979. On July 31, 1980, WABCO commenced this special proceeding against GCC's insurers, appellants in this case, to enforce the judgment pursuant to Fed.R.Civ.P. 69 and N.Y.Civ. Prac.Law & R. Article 52. The parties and the judge treated as a motion for summary judgment WABCO's order to show cause why judgment should not be entered against the insurance companies. Judge Sweet in an opinion held the insurers liable to WABCO. Judgment in the amount of $278,160.40 was entered on January 30, 1981. The insurers appeal.

We need reach only appellants' first ground for reversal. Pursuant to Fed.R. Civ.P. 69, the procedure to be followed on execution of a judgment is the "practice and procedure of the state in which the district court is held." WABCO thus purports to find in New York's procedural law authorization for its direct suit. Specifically, it relies on N.Y.Civ.Prac.Law & R. 5201(a), which provides in pertinent part: "A money judgment may be enforced against any debt . . . unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state." Appellants argue, however, that New York's insurance law makes this procedural provision inapplicable to marine liability insurance policies and, consequently, WABCO cannot recover directly from them. Appellants rely on New York Ins.L. § 167(7), which provides that "any person who . . . has obtained a judgment against the insured . . . for damages for . . . loss or damage occasioned during the life of the policy" may maintain an action upon the policy "to recover the amount of a judgment against the insured." Subsection 167(4), however, by reference to §§ 112(2)(c), 46(21), makes § 167(7) inapplicable to "marine protection and indemnity insurance."

We are thus faced with a conflict between New York's procedural law and its insurance law. Resolving the dispute in favor of N.Y.Civ.Prac.Law & R. § 5201, Judge Sweet stated: "there is no reason why the exception carved out in § 167(4) to the new right of action created in that

* Of the United States District Court for the Southern District of New York, sitting by designation.

section of the Insurance Law applies equally to bar the assertion of a right previously existing under the predecessor to C.P.L.R. § 5201(a)." We disagree with this conclusion.

In § 167(4), the New York legislature created a specific or special exception, in favor of marine insurers, to the provision of § 167(7) authorizing a right of action by judgment creditors against the liability insurers of judgment debtors. In contrast, C.P.L.R. § 5201(a) is the general statute permitting judgment creditors to reach debts to satisfy their judgments. Since these two statutes provide functionally equivalent remedies for judgment creditors, they come into conflict when the purported debt [1] is a marine insurance policy.

When a general and a special or specific statute are antagonistic, courts must respect the time-honored tenet of statutory construction—that the special statute will prevail over the general statute. *See Warren Refining & Chemical Co. v. Sebring*, 192 A.D. 14, 16, 181 N.Y.S. 730, 732 (4th Dept.1920). Accordingly, we must conclude that § 167(4) of the Insurance Law prevails over § 5201(a). As a result, we hold that a money judgment may not be enforced against a judgment debtor's marine liability insurance policy pursuant to § 5201(a).[2]

If we did not determine that § 167(4) forecloses suits on marine insurance policies pursuant to either § 167(7) or, as here, pursuant to § 5201(a), the legislative intent in enacting § 167(4) would be defeated and totally devoid of meaning. In such instance, a judgment creditor could simply bring his action against the insurer pursuant to § 5201(a) rather than § 167(7) and thereby circumvent the legislative mandate of § 167(4). Accordingly, we reverse the judgment and remand the case to the district court.

---

1. *See, e. g., Guercio v. Hertz Corp.*, 40 N.Y.2d 680, 686, 389 N.Y.S.2d 568, 573, 358 N.E.2d 261 (1976) (insurance policies may constitute debts against which a money judgment may be enforced pursuant to C.P.L.R. § 5201(a)).

2. Section 5201(a), enacted in 1963, is derived from analogous language in New York's Civil Practice Act of 1920. *See* Civil Practice Act § 1191. Section 167(7) of the Insurance Law was enacted in 1945. Unless, then, we are to infer that the New York legislature meant nothing by its 1945 enactment, we may assume that, in enacting § 167(7), the legislature believed that the precursor of § 5201(a) did not authorize direct suits against insurers and that a new § 167(7) would allow such actions. Thus, by excluding marine liability insurance from the coverage of § 167(7) in § 167(4), it may be argued that the New York legislature intended to preclude absolutely direct suits on marine insurance policies. As Judge Sofaer has noted, the exception embodied in § 167(4) was "consciously made by the New York legislature to eliminate a perceived competitive disadvantage to which New York's marine insurers were placed by the direct action statute." *Miller v. American S.S. Owners Mutual Protection and Indemnity Co.*, 509 F.Supp. 1047, 1049 (S.D.N.Y.1981). We would be loath to ignore the legislature's conscious choice.