[No. 25688-2-I.   Division One.   August 5, 1991.]

MICHAEL MARSHALL, *Appellant,* v. CARLA J. HIGGINSON, ET AL, *Respondents.*

*Ronald E. Thompson* and *Thompson, Krilich, LaPorte & Tucci, P.S.,* for appellant.

*George W. McLean, Jr.,* and *Julin, Fosso, Sage, McBride & Mason,* for respondents.

COLEMAN, J. — Michael Marshall appeals a summary judgment order granted in favor of Carla Higginson, arguing that the trial court erred when it granted Higginson's motion although, according to Marshall, (1) there were genuine issues of material fact regarding the contract releasing Higginson from liability, (2) the release agreement was unconscionable and violated public policy, and (3) the agreement was not supported by consideration. We reverse.

In 1985 Michael Marshall owned a tavern that he intended to sell. Marshall consulted attorney Carla Higginson for advice regarding the sale. Marshall then entered into an earnest money agreement with purchasers Frank Jensen, John Gambrell, and James Olshefsky. Later, Marshall decided not to honor the earnest money agreement and sold the tavern to other buyers. According to Marshall, Higginson advised him that he was not obligated to honor the agreement.

When Marshall failed to honor the agreement, Jensen, Gambrell, and Olshefsky sued him for breach of contract. Higginson suggested to Marshall that he retain other counsel to defend him in the breach of contract action. Marshall contacted Mark Rowley of Garvey, Schubert and Barer, who assigned Jonathan Kroman to the case.

Trial against Marshall was to begin on October 21, 1986. On October 17, 1986, Higginson learned that she would be subpoenaed by the plaintiffs to testify in the case against Marshall. It had become apparent to Higginson, however, that Marshall was likely to sue her if he lost at trial. She, therefore, asked Marshall to sign an agreement releasing her from liability for any damages sustained in relation to her representation of Marshall in the sale of the tavern.

Marshall consulted with Kroman about the release. Kroman explained that he had not been hired to evaluate any potential malpractice claims against Higginson and, accordingly, he had not done so. He advised Marshall that a release agreement would prevent Marshall from suing Higginson in the future. Kroman further advised Marshall, however, that it was in Marshall's best interest to have Higginson as a friendly witness and compared that interest "to the preservation of a lawsuit of uncertain or unknown merits and value[.]" On October 23, 1986, 2 days after trial had begun but before Higginson testified, Marshall signed an agreement releasing Higginson from liability.

Marshall lost the suit over the earnest money agreement. On October 27, 1988, he filed a complaint against Higginson, Kroman, Rowley, and Garvey, Schubert and Barer for legal malpractice, breach of contract, and fraud. On September 18, 1989, Higginson filed a motion for summary judgment. An order granting Higginson's motion was entered on January 24, 1990.[1] This appeal followed. The first issue we consider is whether there were genuine issues of material fact relating to RPC 1.8(h) that should have precluded the trial court from granting summary judgment to Higginson.

■ Upon review of a trial court's ruling on summary judgment, this court must engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A motion for summary judgment may be granted under CR 56(c) if the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Wilson*, at 437.

Under the Washington Rules of Professional Conduct,

[a] lawyer who is representing a client in a matter:

. . . .

(h) Shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

RPC 1.8(h). The agreement signed by Marshall specifically stated that "[t]his release is being executed after consultation with independent counsel." Additionally, Kroman certified "that he did advise J. Michael Marshall as to the full legal effects and consequences of executing this Release Agreement."

---

[1]The trial court found that there was no just reason to delay final judgment in favor of Higginson although Marshall's claims against the other defendants had not yet been decided.

■ Marshall argues that issues of fact exist regarding the duty Higginson owed to him under RPC 1.8(h). Higginson's only duty under RPC 1.8(h), however, was to advise Marshall that advice from independent counsel was appropriate before he signed the release.[2] Because Marshall had independent counsel who acknowledged that he advised Marshall of the consequences of signing the agreement, Higginson fulfilled her duty under RPC 1.8(h).

Our inquiry, however, does not end there. The fact that Marshall had independent counsel and, thus, that Higginson complied with RPC 1.8(h) does not mean that any agreement the parties entered into necessarily is valid. We therefore consider Marshall's argument that the release agreement is contrary to public policy.[3]

■ The test for whether or not an agreement is contrary to public policy

> is not what the parties did or contemplated doing in order to carry out their agreement, or even the result of its performance; it is whether the contract as made has a "tendency to evil," to be against the public good, or to be injurious to the public.

*Golberg v. Sanglier*, 27 Wn. App. 179, 191, 616 P.2d 1239 (1980), *rev'd on other grounds*, 96 Wn.2d 874, 639 P.2d

---

[2]Marshall implied in his memorandum in opposition to Higginson's motion for summary judgment that Higginson breached her duties of undivided loyalty and full disclosure. Higginson, however, did not owe those duties to Marshall in relation to a potential malpractice action against her.

[3]Generally, if an issue is not raised in the trial court, it will not be considered on appeal. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); RAP 2.5(a). Nothing in the record before this court indicates whether Marshall argued to the trial court that the release violated public policy. At oral argument, the parties were vague whether Marshall raised the public policy argument below. Nevertheless, they agreed that the record before this court is adequate to address the issue. Because the agreement in this case raises serious public policy questions, this court is warranted in addressing the issue whether or not it was raised in the trial court. *See Peoples Nat'l Bank v. Peterson*, 82 Wn.2d 822, 830, 514 P.2d 159 (1973); *State v. Card*, 48 Wn. App. 781, 741 P.2d 65 (1987); *see also* 2A L. Orland, Wash. Prac. § 2132, at 503 (3d ed. 1978).

1347, 647 P.2d 489 (1982). We hold that the release agreement as made in this case between a lawyer and her former client violates public policy.

The stated consideration for Marshall's release is as follows:

> [Higginson] is willing to testify to these and any other events which may be helpful to Marshall's defense of suit the general substance of which is outlined in Exhibit A hereto; and
> . . . she is willing to do so at no charge and to cooperate fully in trial preparation[.]

Higginson presented the release for Marshall to sign after the trial against him had begun, when her favorable testimony was crucial. The contract leaves a clear impression that if Marshall refused to sign the release, Higginson would not testify on his behalf. That representation is misleading for the reasons that follow. First, before Higginson presented Marshall with the release, the plaintiffs in the tavern case had subpoenaed her to testify. She therefore already had a duty to testify truthfully in the case. Furthermore, had Higginson's testimony at trial not already been commanded by the plaintiffs, Marshall himself could have subpoenaed her. Finally, she had a duty to testify whether or not she was compensated. Hence, Higginson's promise to testify at no charge on Marshall's behalf was illusory.

Higginson argues that even if the promise to testify was not valid consideration for the release, other consideration supports the agreement. Whether or not the release was supported by other consideration, however, the agreement between Higginson and her former client is not enforceable. Higginson's favorable testimony was the primary consideration for the release. The whole agreement is tainted by the inference that Higginson would testify on Marshall's behalf only if he released her from liability.

■ Higginson explained that she felt uncomfortable cooperating any more than the law required in light of her

knowledge that Marshall intended to sue her if he lost the tavern sale case. We emphasize that we are not deciding here what Higginson's motivations for the release may have been. Whatever Higginson's motivations, the agreement as written violates public policy. It is inappropriate for a lawyer to condition an agreement upon misleading representations. That sort of agreement promotes disrespect of lawyers and undermines confidence in the legal profession. The inference that Higginson would testify only on the condition that Marshall signed the release so permeates the agreement that it must be set aside.[4]

The decision of the trial court is reversed, and the case is remanded for trial.

FORREST and AGID, JJ., concur.

Review granted at 118 Wn.2d 1008 (1992); case dismissed at 119 Wn.2d 1013 (1992).

---

[4]As a result of the holding, this court need not address the parties' other arguments.