210 P.3d 318 (2009)
Joanne Faye TORGERSON, as trustee for the Torgerson Family Trust, Petitioner,
v.
ONE LINCOLN TOWER, LLC, a Delaware limited liability company; Bellevue Master, LLC, a Delaware limited liability company; LS Holdings, LLC, a Washington limited liability company, Respondents.
Michael Miller and Vicki Ringer, both individuals, Petitioners,
v.
One Lincoln Tower, LLC, a Delaware limited liability company; Bellevue Master, LLC, a Delaware limited liability company; LS Holdings, LLC, a Washington limited liability company, Respondents.
No. 80623-3.
Supreme Court of Washington, En Banc.
Argued September 23, 2008.
Decided June 25, 2009.
*320 Dennis John McGlothin, Olympic Law Group PLLP, Seattle, WA, for Petitioners.
David A. Nold, Brian Michael Muchinsky, Nold & Associates PLLC, Bellevue, WA, for Respondents.
Scott Emmett Hildebrand, Attorney at Law, Bellevue, WA, Amicus Curiae on behalf of Master Builders Association.
SANDERS, J.
¶ 1 We are asked to determine whether a real estate contract can limit buyers' remedies for breach to the return of their deposits and certain money spent on improving the property. Petitioners are licensed real estate agents for a condominium development who also bought residential units there. As condominium buyers, the agents want the court to strike down a contract clause that limited their remedies in case of sellers' breach to the return of their deposits, or "earnest money," and any nonrefundable sums paid to third parties to improve their units.
¶ 2 The real estate agents argue the limitation on remedies is unconscionable, fails its essential purpose to provide a meaningful remedy, and is otherwise unenforceable because it contravenes public policy. The sellers counter that the remedies limitation was unambiguously spelled out in the purchase and sale agreement, and Washington should uphold freedom of contract. The agents maintain the Court of Appeals erred when it affirmed summary judgment in favor of the sellers and awarded them attorney fees. We affirm and award sellers attorney fees on appeal.

FACTS AND PROCEDURAL HISTORY
¶ 3 Petitioners Michael Miller, Vicki Ringer, and Joanne Faye Torgerson (collectively Buyers) seek review of a Court of Appeals, Division One, decision that affirmed summary judgment in favor of One Lincoln Tower, LLC; Bellevue Master, LLC; and LS Holdings, LLC (collectively Sellers). In 1997 Ian Gillespie, a Canadian developer, began working on a large mixed-used project that would span five acres in downtown Bellevue. Gillespie formed One Lincoln Tower, LLC and set to work on the project, which was to include an underground parking garage, retail space, an office tower, a four-star hotel, and 148 luxury condominium units. Bellevue Master, LLC, the legal entity selling the units, authorized Buyers Miller, Ringer, and Torgerson as licensed real estate agents to list and sell the condominiums.
¶ 4 In the summer of 2001, Buyers contracted to purchase residential units in the complex for themselves. Miller and Ringer put down only a $5,000 deposit, and assigned $11,606 of their condominium sales commissions to be paid seven days prior to closing, totaling about five percent of their unit's $332,220 purchase price. Miller and Ringer added to the contract that they "may elect to mix standard color schemes. ..." Miller Clerk's Papers (MCP) at 17. Torgerson, in turn, bought a $1,318,000 unit on behalf of the "Torgerson Family Trust." Torgerson Clerk's Papers (TCP) at 13. She paid only $5,000 up front and assigned about $126,000 of her commissions, to be paid at closing, totaling a 10 percent deposit on her condominium's price tag. Torgerson also amended the contract to request an independent inspection form and to reserve the right to interchange her unit's interior finishings.
¶ 5 The contracts Buyers signed contained a provision limiting remedies under the bold-face heading, "21. DEFAULTS AND REMEDIES." MCP at 22; TCP at 19. Therein lies the rub. The clause provides, in relevant part:
If Buyer fails, without legal excuse, to close this transaction as and when required by this Agreement, Seller may terminate this Agreement and all of the rights granted to Buyer herein and retain the Deposit and any interest earned thereon as its sole and exclusive remedy;. ... [A]ny default by Seller under this Agreement ... shall enable Buyer, as its sole and exclusive remedy, to terminate this Agreement and *321 recover from Seller the portion of the Deposit paid by Buyer and any nonrefundable sums reasonably paid by Buyer to unrelated third parties that are authorized by Seller in writing to alter or improve the Unit....
MCP at 22; TCP at 19.
¶ 6 In addition, Sellers had Buyers sign a separate page that repeated, in capital letters,
SELLER AND BUYER INITIAL THIS PAGE TO CONFIRM THEIR AGREEMENT IN SECTION 21 OF THIS AGREEMENT, WHICH PROVIDES THAT IF BUYER FAILS, WITHOUT LEGAL EXCUSE, TO CLOSE THIS TRANSACTION AS AND WHEN REQUIRED BY THIS AGREEMENT, SELLER MAY TERMINATE THIS AGREEMENT AND RETAIN THE DEPOSIT AND ANY INTEREST EARNED THEREON AS ITS SOLE AND EXCLUSIVE REMEDY FOR SUCH FAILURE.
MCP at 15; TCP at 14. This page did not repeat the corresponding remedy limitation for Buyers in case Sellers breached. The contract also provided that if Buyers' units were not substantially completed by December 31, 2003, they had the right to rescind their contracts and get their deposits back.
¶ 7 In December 2001 Sellers amended their standard contracts for all new condominium purchases. The revised version did not contain the limitation on remedies and allowed future buyers to seek their deposits back as well as other remedies but not consequential or punitive damages. Miller and Torgerson, as real estate agents for the condominiums, were informed of the contract changes by e-mail and asked for their input. The record shows no input from Torgerson, while Miller e-mailed back about the new contract, but referenced the new completion date, not the limitation on remedies.
¶ 8 In 2002 the project stalled, and One Lincoln Tower sold the development and all its interests to LS Holdings, LLC in August 2003. In December 2003 all condominium buyers received a letter signed by Ringer as agent, saying that despite the new ownership and the need to "redocument" purchases with updated completion dates and unit interiors, buyers still had the right to purchase their condominiums for the same price, and any changes to existing contracts would be "minimal." MCP at 56-57; TCP at 54-55. The letter also said all buyers had the right to withdraw from the project and receive their deposits back, which had been held in escrow.
¶ 9 In May 2004 LS Holdings terminated the contracts with Buyers Miller, Ringer, and Torgerson by letter and authorized return of their deposits, claiming in part that Torgerson had breached her fiduciary duty by referring an unrepresented buyer to an outside agent. In November 2004 Buyers sued Sellers in two separate cases for breach of contract, seeking specific performance or money damages and attorney fees and costs. Sellers admitted breach but contended Buyers were limited by contract to return of their deposits and filed a counterclaim for rescission based on breach of Buyers' fiduciary duties as real estate agents. Sellers moved for summary judgment in 2005, asking the trial court to enforce the limitation on remedies and to dismiss Buyers' actions once the deposits, and any interest earned on them, were returned. Buyers filed a cross motion for summary judgment, arguing the limitation on remedies was unconscionable and unenforceable.
¶ 10 On May 6, 2005, the trial court heard the motions in both cases together, and three days later entered an order granting summary judgment in favor of Sellers. The court ordered Sellers to return Buyers' deposits within five days and did not award either side attorney fees, conditioning dismissal of the cases on the return of the earnest money. The court also denied Buyers' motions to amend their complaints to add claims for promissory estoppel and denied Sellers' motion for attorney fees, which Sellers claimed they had a right to under the contract. In an unpublished opinion, the Court of Appeals affirmed the summary judgment decision, but reversed the denial of attorney fees and costs, saying Sellers were entitled to them as the prevailing parties. Miller v. One Lincoln Tower, LLC, noted at 139 Wash.App. 1018, 2007 WL 1733170, at * 6 (2007). We granted review on four issues: *322 (1) whether the limitation on remedies is unconscionable; (2) whether the limitation fails its essential purpose; (3) whether the limitation is void for public policy reasons; and (4) whether Sellers or Buyers are entitled to attorney fees. 163 Wash.2d 1044, 187 P.3d 271 (2008).

STANDARD OF REVIEW
¶ 11 We review summary judgments de novo. Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wash.2d 345, 350, 111 P.3d 1173 (2005). Whether a contract is unconscionable is a question of law reviewed de novo. Adler v. Fred Lind Manor, 153 Wash.2d 331, 344, 103 P.3d 773 (2004). That includes the question of whether a limitation on remedies is unconscionable. M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 585, 998 P.2d 305 (2000). Whether a contract or statute authorizes an award of attorney fees is also a question of law reviewed de novo. Schlener v. Allstate Ins. Co., 121 Wash.App. 384, 388, 88 P.3d 993 (2004).

ANALYSIS

I. The contractual provision limiting remedies is not unconscionable and must be enforced
¶ 12 "It is black letter law of contracts that the parties to a contract shall be bound by its terms." Adler, 153 Wash.2d at 344, 103 P.3d 773. Here, Buyers argue they should be excused from the terms of the contract because the limitation on remedies is both procedurally and substantively unconscionable. The Court of Appeals did not analyze Buyers' unconscionability claims, reasoning these arguments, along with the "failure of essential purpose" claim, were rooted in the Uniform Commercial Code (UCC),[1] which generally does not apply to real estate transactions. Miller, 139 Wash. App. 1018, 2007 WL 1733170, at * 3. The court cited its holding in Southcenter View Condominium Owners' Association v. Condominium Builders, Inc., 47 Wash.App. 767, 771, 736 P.2d 1075 (1986), stating "the UCC does not apply to contracts for the sale of real estate and declin[ing] to apply its provisions by analogy." Miller, 139 Wash.App. 1018, 2007 WL 1733170, at *3.
¶ 13 However, as the court noted, we have held the unconscionability doctrine is applicable beyond the UCC context. See, e.g., Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 391, 858 P.2d 245 (1993) (applying unconscionability principles to sewer service agreements and finding them conscionable); Scott v. Cingular Wireless, 160 Wash.2d 843, 857, 161 P.3d 1000 (2007) (finding a provision in cellular phone contracts that forbade class action lawsuits substantively unconscionable); Adler, 153 Wash.2d at 364, 103 P.3d 773 (finding provisions regarding attorney fees and statute of limitations in employment agreement substantively unconscionable).
¶ 14 Although the Court of Appeals erred by not addressing Buyers' unconscionability arguments, we nonetheless find those claims merit less, both as to procedural and substantive unconscionability. We have distinguished between "procedural" unconscionability, involving blatant unfairness in the bargaining process and a lack of meaningful choice, and "substantive" unconscionability, or unfairness of the terms or results. Yakima County (W. Valley) Fire Prot. Dist. No. 12, 122 Wash.2d at 391, 858 P.2d 245. Procedural unconscionability is determined in light of the totality of the circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were "`hidden in a maze of fine print.'" Id. (quoting Schroeder v. Fageol Motors, Inc., 86 Wash.2d 256, 260, 544 P.2d 20 (1975)); see also Am. Nursery Prods. v. Indian Wells Orchards, 115 Wash.2d 217, 220, 797 P.2d 477 (1990). We have stressed "`these three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed.'" Adler, 153 Wash.2d at 345, 103 P.3d 773 (alteration in original) (emphasis *323 added) (quoting Nelson v. McGoldrick, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995)).
¶ 15 In contrast, substantive unconscionability involves cases "`where a clause or term in the contract is ... one-sided or overly harsh....'" Id. at 344, 103 P.3d 773 (second alteration in original) (quoting Schroeder, 86 Wash.2d at 260, 544 P.2d 20). However, such unfairness must truly stand out. "`"Shocking to the conscience", "monstrously harsh", and "exceedingly calloused" are terms sometimes used to define substantive unconscionability.'" Id. at 344-45, 103 P.3d 773 (quoting Nelson, 127 Wash.2d at 131, 896 P.2d 1258 (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wash.App. 439, 444, 556 P.2d 552 (1976))).
¶ 16 In this case, Buyers are licensed, experienced real estate agents charged with presenting the same purchase and sale agreement to other buyers that they themselves signed. As in American Nursery, 115 Wash.2d 217, 797 P.2d 477, the parties negotiated the contract, with these Buyers using their expertise and role as agents for the developers to make amendments regarding the interior finishings, color schemes, and due date and amount for money down. They could hardly be said to have lacked meaningful choice. Unlike the vast majority of home buying consumers, these Buyers negotiated to put down only $5,000 deposits on properties that cost $332,220 and $1,318,000. Not only does this seem like a sweetheart deal, but the Buyers negotiated to pay the rest of the deposits in commissions from their work as agents for the condominium development, and that money was due only seven days prior to closing or at closing. The status of these Buyers as sophisticated real estate agents who had an opportunity to modify the contracts distinguishes this case from one involving the usual consumers in real estate transactions. Rather than hiding in a maze of fine print, the remedy limitation clause was in the same size font as other key provisions and set off in paragraph 21, which was clearly labeled "DEFAULT AND REMEDIES." MCP at 22; TCP at 19. Furthermore, Buyers signed a separate page that directed their attention to this section and attested, in capital letters, to their understanding that Sellers would keep Buyers' deposits and any interest, in the event Buyers breached. MCP at 15; TCP at 14. Because these Buyers cannot be said to have lacked meaningful choiceand in fact took the opportunity to change the contracts to their advantagetheir procedural unconscionability arguments must fail.
¶ 17 Buyers rely on Zuver v. Airtouch Communications, Inc., 153 Wash.2d 293, 103 P.3d 753 (2004), to argue the provision limiting remedies "exculpates the Developers from liability and effectively prevents the Buyers from pursuing valid claims for breach of contract compensatory damages." Suppl. Br. of Pet'r at 3. In Zuver, 153 Wash.2d at 318-19, 103 P.3d 753, this court held confidentiality and remedies provisions in an employment contract were substantively unconscionable because they excessively favored the employer and allowed only the employer significant legal recourse. Similarly, Buyers cite the July 2007 Scott decision, 160 Wash.2d at 857, 161 P.3d 1000, which held that a clause compelling individual arbitration and waiving class actions was substantively unconscionable because it drastically foreclosed attempts to vindicate consumer rights. "A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy." Id. (citing Zuver, 153 Wash.2d at 318, 103 P.3d 753).
¶ 18 However, Buyers cannot compare the remedies limitation in their purchase and sale agreements, negotiated with their expertise as agents, with the clauses at issue in Zuver, 153 Wash.2d 293, 103 P.3d 753, and Scott, 160 Wash.2d at 857, 161 P.3d 1000, which were deemed to effectively foreclose legal action for one side. Here, both sides are limited to the retention or return of deposits in case of breach. To be sure, the deposits come out of Buyers' pockets; but at $5,000 and the promise of real estate commissions payable upon closing, the deposits are not so insignificant a sum as to foreclose legal action.
¶ 19 One concern is whether the remedies limitation gives Sellers an incentive to breach because they would be out only Buyers' deposits *324 and any nonrefundable sum Buyers paid to third parties to improve the units. However, the allocation of risk is not so one-sided as it would first appear, as the Court of Appeals correctly pointed out. Whenever the fair market value of the condominiums increases dramatically between presale and completion, Sellers may have an incentive to breach, but when the housing market takes a downturn (as may be the case in a recession), Buyers would seem to have an incentive to breach. Moreover, unlike most home buying consumers, these Buyers may have initially agreed to this allocation of risk in exchange for putting down such small deposits$5,000 each, with the rest of their 5 percent or 10 percent down payments paid by commissions due right before or at closing.
¶ 20 Furthermore, as this court noted in American Nursery, 115 Wash.2d at 225, 797 P.2d 477, the "perhaps misguided judgment" on the part of one party does not make an exclusionary clause unconscionable. The key is whether both parties, "in an arm's-length transaction, negotiated and entered into a contract with no indicia of unfair surprise." Id. We emphasize that Buyers are trained, licensed real estate agents who had a reasonable opportunity to understand the terms of the agreement, which under these circumstances cannot be classified as a contract of adhesion, and indeed found time enough to assert their desires regarding interior finishings and when to turn over the rest of the deposit in the form of real estate commissions. As this court has noted, Judge Learned Hand said, "`[I]t does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves.'" Id. at 226, 797 P.2d 477 (quoting James Baird Co. v. Gimbel Bros., 64 F.2d 344, 346 (2d Cir.1933)).
¶ 21 Buyers also contend they are entitled to special protection because these condominium sales are consumer transactions that fall under the "Berg/Baker Special Rule." Suppl. Br. of Pet'r at 5-6 (citing Berg v. Stromme, 79 Wash.2d 184, 194-95, 484 P.2d 380 (1971); Baker v. City of Seattle, 79 Wash.2d 198, 484 P.2d 405 (1971)). Under the rule, provisions limiting remedies in a consumer transaction must be explicitly negotiated between buyer and seller and be set forth with particularity. Berg, 79 Wash.2d at 196, 484 P.2d 380. For the proposition that the condominium sales are consumer transactions, Buyers cite the UCC definition of goods purchased "primarily for personal, family, or household purposes," and a similar Black's Law Dictionary definition of "consumer transaction." Suppl. Br. of Pet'r at 8 (citing RCW 62A.2-103(3)); id. at 8. However, Buyers signed a contract that explicitly laid out the remedies limitations and a separate form that referenced that section in capital letters. Beyond their assertion that this was a contract of adhesion, Buyers do not point to anything in the record that shows they could not have negotiated on the remedies limitations, as they did on other matters regarding their condominium purchases. In fact, as licensed real estate agents who sold these units, they were asked for input when the contracts were later changed for future buyers, and said nothing about the remedies limitations. In American Nursery, 115 Wash.2d at 224, 797 P.2d 477, we refused to apply the Berg requirements "to negotiations between competent persons dealing at arm's length, with no claim of an adhesion contract, when the contract contains a specific disclaimer and when the contract language is clear."
¶ 22 Thus, whether one labels this transaction as a real estate, consumer, or commercial deal, the principles of the unconscionability doctrine remain the same. Here, Buyers fail to establish the contract they amended, signed, and represented to other condominium purchasers was substantively or procedurally unconscionable. As such, we decline to use Buyers' claims as the launch pad for an analysis of when the doctrine of unconscionability applies to real estate transactions.

II. The remedy limitations do not fail their essential purpose, and we need not extend UCC remedies protections to this real estate contract
¶ 23 As aforementioned, the Court of Appeals did not consider this argument because the UCC does not generally apply to real estate contracts. Under the UCC, general *325 remedies may be available where "circumstances cause an exclusive or limited remedy to fail of its essential purpose." RCW 62A.2-719(2). That is, a sales contract should provide at least minimum adequate remedies. RCWA 62A.2-719 UCC cmt. 1. Nonetheless, commentary for this section notes parties are free to shape their remedies, and reasonable agreements limiting them are to be given effect. Id.
¶ 24 Buyers argue Washington courts have already applied UCC provisions by analogy to non-UCC cases, citing Olmsted v. Mulder, 72 Wash.App. 169, 177, 863 P.2d 1355 (1993). Olmsted, 72 Wash.App. at 177-78, 863 P.2d 1355, held that "[a]lthough the Uniform Commercial Code is not directly applicable to the sale of real estate, .... [w]e believe the reasoning of the U.C.C. on the disclaimer of warranties is persuasive and can be applied by analogy in this case." But just because courts have applied the UCC by analogy on definitional matters such as the meaning of a disclaimer, and this court has applied the unconscionability doctrine beyond the UCC context, does not mean we need to import UCC remedial provisions into real estate contracts. See, e.g., Christiansen Bros. v. State, 90 Wash.2d 872, 877-78, 586 P.2d 840 (1978) (applying unconscionability principles to construction contract but refusing to extend UCC remedial provisions, as "[t]his is a task for the legislative branch"). More importantly, since Buyers get their deposits back, along with any interest earned on them, they are not left without "a fair quantum of remedy," as is the concern of the UCC in a goods context. RCWA 62A.2-719 UCC cmt. 1.

III. The limitation on remedies is not void for public policy reasons

¶ 25 Buyers also contend the provision limiting remedies has a tendency to do evil and inflict injury on the public. They cite Marshall v. Higginson, 62 Wash.App. 212, 216, 813 P.2d 1275 (1991) (noting courts can refuse to enforce a contract that "`has a "tendency to evil," to be against the public good, or to be injurious to the public'" (quoting Golberg v. Sanglier, 27 Wash.App. 179, 191, 616 P.2d 1239 (1980), rev'd, 96 Wash.2d 874, 639 P.2d 1347, 647 P.2d 489 (1982))). In Marshall, 62 Wash.App. at 216, 813 P.2d 1275, the Court of Appeals held that it was against public policy for an attorney to force a client to sign a contract conditioning the attorney's testimony at his trial to his promise not to sue her for malpractice. Enforcing such a contract would clearly injure the public's trust in the legal profession and clients' right to counsel and to a fair trial. Here, there is no comparable "evil" or injury to the public; nor do Buyers establish which specific public policy is allegedly violated.[2] As aforementioned, the remedies limitations can cause either these Buyers or Sellers to bear the risk of the other party's breach, depending on changes in the housing market. The Court of Appeals was correct to hold that "this agreed upon allocation of risk, which limits liability for both parties, does not violate public policy." Miller, 139 Wash.App. 1018, 2007 WL 1733170, at *3.

IV. Sellers are entitled to attorney fees by contract as the prevailing parties
¶ 26 The Court of Appeals correctly reversed the trial court on this issue, awarding Sellers attorney fees and costs. In Washington parties may not recover attorney fees except under a statute, contract, or some well-recognized principle of equity. Quality Food Ctrs. v. Mary Jewell T, LLC, 134 Wash. App. 814, 817, 142 P.3d 206 (2006).
¶ 27 Here, paragraph 22 of the contract provides for attorney fees and costs at trial and on appeal:
The prevailing party in any litigation concerning this Agreement shall be entitled to be paid its court costs and reasonable attorneys' fees by the party against whom *326 judgment is rendered, including such costs and fees as may be incurred on appeal.
MCP at 22; TCP at 19.
¶ 28 The trial court ruled Sellers were not entitled to attorney fees because "judgment" was not rendered against Buyers, as Sellers had to reimburse Buyers' deposits for the court to dismiss Buyers' claims for breach of contract. But the trial court entered summary judgment in favor of Sellers, which admitted breach and all along wanted to limit Buyers' remedies to return of their deposits. In Piepkorn v. Adams, the court held that the term "prevailing party" in a bilateral contract should be interpreted to mean the substantially prevailing party. 102 Wash. App. 673, 686, 10 P.3d 428 (2000) (citing Marassi v. Lau, 71 Wash.App. 912, 916, 859 P.2d 605 (1993), which discusses the "proportionality approach"). Sellers are entitled by contract to attorney fees at trial and on appeal, including review by this court.

CONCLUSION
¶ 29 We hold that Buyers, who as sophisticated real estate agents represented the condominium Sellers and were given an opportunity to provide input into the contracts, have not shown the remedies limitation is unconscionable, fails its essential purpose, or violates public policy. Thus, we affirm the Court of Appeals decision and the summary judgment in favor of Sellers. In addition, we affirm the Court of Appeals award of reasonable attorney fees and costs to Sellers as the prevailing parties at trial and on appeal, as provided by contract.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ.
NOTES
[1] See RCW 62A.2-719(3) (dealing with unconscionability); RCW 62A.2-719(2) (dealing with failure of essential purpose).
[2] The Court of Appeals did not consider Buyers' argument that the limitation on remedies is unenforceable because it violates the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. §§ 1701-1720. "Buyers did not raise this argument below, and we decline to consider it under RAP 2.5(a)." Miller, 139 Wash.App. 1018, 2007 WL 1733170, at * 3 n. 12. We agree. While Buyers vaguely mention ILSA, they fail to cite what portion of the act, or what regulation promulgated under the act, the limitation on remedies allegedly contravenes.