224 P.3d 818 (2009)
Donia TOWNSEND and Bob Perez, individually, on behalf of their marital community, and as class representatives; Paul Ysteboe and Jo Ann Ysteboe, individually, on behalf of their marital community, and as class representatives; Vivian Lehtinen and Tony Lehtinen, individually, on behalf of their marital *819 community and on behalf of their minor children, Niklas and Lauren; Jon Sigafoos and Christa Sigafoos, individually, on behalf of their marital community, and on behalf of their minor children, Colton and Hannah, Respondents,
v.
The QUADRANT CORPORATION, a Washington corporation; Weyerhaeuser Real Estate Company, a Washington corporation; and Weyerhaeuser Company, a Washington corporation, Appellants.
No. 62700-7-I.
Court of Appeals of Washington, Division 1.
December 28, 2009.
*822 Michael Ramsey Scott, Laurie Lootens Chyz, Michael Jacob Ewart, Hillis Clark Martin & Peterson, Seattle, WA, for Appellants.
Lory Ray Lybeck, Katherine Lynn Felton, Brian Clifford Armstrong, Benjamin R. Justus, Lybeck Murphy LLP, Mercer Island, WA, for Respondents.
APPELWICK, J.
¶ 1 Four families who purchased homes built by Quadrant Corporation sued Quadrant and its parent corporations, Weyerhaeuser Real Estate Company and Weyerhaeuser Corporation, for fraud, negligence, negligent misrepresentation, rescission, and a declaration of the unenforceability of the arbitration clause for unconscionability. The purchase and sale agreement (PSA) used in all four transactions contains a broad mandatory arbitration provision covering any controversy or claim arising out of or relating to breach of the PSA or any claimed defect. Quadrant appeals the order denying its motion to stay proceedings and to compel arbitration as a matter of right under RCW 7.04A.280(1)(a). Quadrant contends that an arbitrator, not a court, must decide whether the PSA was invalid for unconscionability.
¶ 2 RCW 7.04A.060(2) grants the court the authority to decide whether an agreement to arbitrate exists, so the trial court did not err in considering the validity of the arbitration clause. However, the facts alleged by the Homeowners do not support a finding that the arbitration clause itself was procedurally or substantively unconscionable. Under the arbitration statute, the arbitrator must decide whether a contract containing a valid agreement to arbitrate is enforceable. Because the arbitration clause itself is valid, we reverse and remand for the trial court to refer the claims to arbitration.

FACTS
¶ 3 Respondents (the Homeowners) purchased houses designed, built, and sold by appellants The Quadrant Corporation, Weyerhaeuser Real Estate Company (WRECO), and Weyerhaeuser Company. The respondents are four married couples: Donia Townsend and Bob Perez (the Perezes), Paul and Jo Ann Ysteboe, Vivian and Tony Lehtinen, Jon and Crista Sigafoos, and the Lehtinen and Sigafoos children.[1] Quadrant is a wholly *823 owned subsidiary of WRECO, and WRECO is a wholly owned subsidiary of Weyerhaeuser. Quadrant designs, develops, builds, and markets planned residential communities throughout Washington.
¶ 4 The Homeowners' declarations contain descriptions of the purchasing process, wherein they allege that Quadrant presented them with the PSA on a "take it or leave it" basis, used high-pressure sales tactics, withheld material information about other lawsuits against it, and precluded the Homeowners from reviewing the PSA before signing it electronically.[2] After purchasing and living in their homes and discovering the alleged defects, the Homeowners alleged that they had not received the homes they bargained for, paid for, or expected, as the homes were built in a rapid, assembly line style, allowing only 54 total working days for the entire production of each home. The Homeowners allege that the reckless construction process resulted in numerous construction defects, caused injury in the form of mold growth, pests, and poisonous gases, and violated the Consumer Protection Act[3] (CPA). The Homeowners sued the defendants for fraud, outrage, violation of the CPA, negligence, negligent misrepresentation, rescission, breach of warranty, and a declaration of the unenforceability of the arbitration clause contained in the PSA.
¶ 5 The PSAs used in all four transactions are virtually identical, as are the arbitration clauses, which are located on the last page, just above the signature line. The language of the arbitration provision reads:
Any controversy or claim arising out of or relating to this Agreement, any claimed breach of this Agreement, or any claimed defect relating to the Property, including, without limitation, any claim brought under the [CPA], (but excepting any request by Seller to quiet title to the Property) shall be determined by arbitration commenced in accordance with RCW 7.04[A].060.
¶ 6 On January 11, 2008, Quadrant moved to compel arbitration of all claims brought by the Perezes and Ysteboes and to stay trial court proceedings. That same day, Weyerhaeuser and WRECO moved for summary judgment seeking dismissal of all the claims on the merits with prejudice. In opposition to Quadrant's motion to compel arbitration, the Homeowners challenged the validity of the arbitration clause for procedural and substantive unconscionability. The court denied Weyerhaeuser and WRECO's summary judgment motion and Quadrant's motion to compel arbitration and stay proceedings.[4]
¶ 7 Once the trial court consolidated the Lehtinen and Sigafoos lawsuits with the class action, Weyerhaeuser and WRECO moved to compel arbitration of the consolidated cases, as did Quadrant. Again, the Homeowners challenged the enforceability of the arbitration provision and the PSA itself as procedurally and substantively unconscionable.
¶ 8 On December 2, 2008, the trial court denied the appellants' motions to compel arbitration. The court signed the appellants' proposed order. The order stated two reasons for denial of the motions. First, there were "disputes of fact concerning whether the plaintiffs' PSAs with Quadrant were negotiated contracts or contracts of adhesion." Second, "[a]s a matter of law, the arbitration clauses in the plaintiffs' [PSAs] with Quadrant do not apply to plaintiffs' claims regarding subsequent remediation costs due to construction defects."[5] Quadrant, WRECO, and Weyerhaeuser appealed this order.
¶ 9 On December 3, 2008, appellants filed with this court a motion for stay of trial court proceedings pending appeal. On December 22, 2008, a commissioner granted Quadrant's motion to stay proceedings, finding that the trial court lacked authority under RAP 7.2 to engage in further discovery or pretrial motion *824 practice in the suits subject to this appeal.

DISCUSSION

I. Validity of Agreement to Arbitrate RCW 7.04A.060

¶ 10 Quadrant[6] contends that the trial court acted ultra vires when it decided that the PSA was unenforceable. Citing specifically to RCW 7.04A.060(3), Quadrant suggests that an arbitrator, not a court, decides issues of enforceability of the underlying contract under the Uniform Arbitration Act, chapter 7.04A RCW.
¶ 11 Arbitrability is a question of law we review de novo. Zuver v. Airtouch Commc'ns, Inc., 153 Wash.2d 293, 302, 103 P.3d 753 (2004). The burden of proof is on the party seeking to avoid arbitration. Id. As a threshold matter, the parties dispute whether chapter 7.04A RCW gives the courts or the arbitrator the authority to decide the challenges at issue in this case.[7]
¶ 12 RCW 7.04A.060 provides circumscribed decision-making authority for both the courts and arbitrators:
(1) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract.
(2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
(3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.
¶ 13 RCW 7.04A.060 is based on section 6 of the uniform act. Comment 2 to section 6 explains that subsection (b) and (c) in the uniform act[8] set up a clear distinction between substantive and procedural arbitrability:
Subsections (b) and (c) of Section 6 are intended to incorporate the holdings of the vast majority of state courts and the law that has developed under the FAA [Federal Arbitration Act, 9 USC §§ 1-14] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, i.e., whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.
UNIF. ARBITRATION ACT (UAA) § 6 cmt. 2, 7 U.L.A. 24 (2005). Under RCW 7.04A.060(2), a court may entertain only a challenge to the validity of the arbitration clause itself, not a challenge to the validity of the contract containing the arbitration clause. McKee v. AT&T Corp., 164 Wash.2d 372, 394, 191 P.3d 845 (2008) (when the validity of the arbitration agreement itself is at issue, a court, not *825 an arbitrator, must first determine whether there was a valid agreement to arbitrate).
¶ 14 In Pinkis v. Network Cinema Corp., litigated under the substantially similar provision of the FAA, we held that the statutory language did not permit the court to consider the general challenge to the contract. 9 Wash.App. 337, 342, 346, 512 P.2d 751 (1973). The plaintiff had challenged the validity of the entire contract on the basis of fraud in the inducement. Id. He had not made a claim for fraud in the inducement of the arbitration clause itself. Id.; accord McKee, 164 Wash.2d at 394, 191 P.3d 845 (contrasting McKee's challenge to the arbitration provision to Buckeye, where the challenge was to the validity of the entire contract) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).
¶ 15 This distinction between subsections 2 and 3 of RCW 7.04A.060 also comports with the separability doctrine implied in the statute. Comment 4 to section 6 of the Uniform Arbitration Act further explains that the language in subsection (c), "`whether a contract containing a valid agreement to arbitrate is enforceable,' is intended to follow the `separability' doctrine outlined in Prima Paint Corp. v. Flood & Conklin Manufacturing Co.[[9]]" UAA § 6 cmt. 4, 7 U.L.A. at 25. In Prima Paint, the Supreme Court held that the arbitration clause was separable from the contract in which it was made. 388 U.S. at 403-04, 87 S.Ct. 1801. There, the plaintiff filed a suit to rescind an agreement for fraud in the inducement. Id. at 408, 87 S.Ct. 1801. The alleged fraud was in inducing assent to the contract itself, not specifically to the arbitration clause. Id. at 398, 406, 87 S.Ct. 1801. Because Prima Paint had not claimed fraud in the inducement of the arbitration clause itself, the court could not consider it. Id. at 403-04, 87 S.Ct. 1801.
¶ 16 We echoed the separability holding of Prima Paint in Pinkis, explaining that "[w]here no claim is made that entry into the arbitration clause itself was fraudulently induced, a broad arbitration clause will encompass arbitration of the claim that the entire contract was induced by fraud." 9 Wash. App. at 341-42, 512 P.2d 751; accord Prima Paint, 388 U.S. at 404, 87 S.Ct. 1801.
¶ 17 Accordingly, if a party makes a discrete challenge to the enforceability of the arbitration clause, a court must determine the validity of the clause. RCW 7.04A.060(2). If the court finds as a matter of law that the arbitration clause is enforceable, all issues covered by the substantive scope of the arbitration clause must go to arbitration. RCW 7.04A.060(2), (3). If the court finds as a matter of law that the arbitration clause is not enforceable, all issues remain with the court for resolution, not with an arbitrator. Alternatively, if a party challenges only the validity of the contract as a whole, the arbitrator has the authority under RCW 7.04A.060(3) to determine the validity of the contract.[10]

II. Unconscionability

¶ 18 Agreements may be either substantively or procedurally unconscionable. Zuver, 153 Wash.2d at 303, 103 P.3d 753.

A. Substantive Unconscionability

¶ 19 The Homeowners allege, below and on appeal, that the arbitration clause is substantively unconscionable. Because this challenge is specific to the clause itself, and not to the PSA, the court has the authority to entertain it. RCW 7.04A.060(2).
*826 ¶ 20 Substantive unconscionability alone is sufficient to support a finding of unconscionability. Adler v. Fred Lind Manor, 153 Wash.2d 331, 346-47, 103 P.3d 773 (2004). Substantive unconscionability involves those cases where a clause or term in the contract is one-sided or overly harsh. Torgerson v. One Lincoln Tower, LLC, 166 Wash.2d 510, 519, 210 P.3d 318 (2009). An arbitration clause may be substantively unconscionable if it prohibits class actions, either by its express terms or in effect. Dix v. ICT Group, Inc., 160 Wash.2d 826, 837, 161 P.3d 1016 (2007) (holding that a forum selection clause that in effect precluded class actions was unenforceable); Scott v. Cingular Wireless, 160 Wash.2d 843, 855-57, 161 P.3d 1000 (2007) (holding that an arbitration provision that expressly precluded class actions violated the policy behind the CPA and was therefore unconscionable).
¶ 21 The Homeowners argue that the clause could prevent them from resolving their claims in a single class action. However, the language of the arbitration clause at issue here does not prohibit class actions, either explicitly[11] or in effect. See, e.g., Scott, 160 Wash.2d at 857, 161 P.3d 1000 (where the clause barring class action both in arbitration and in court was exculpatory, leaving the consumer without remedy). The Homeowners have cited no authority to suggest that resolution of class actions in arbitration is substantively unconscionable or otherwise barred. The implication of the language in Scott is that class action arbitration is not substantively unconscionable.
¶ 22 An arbitration clause may also be substantively unconscionable if it "triggers costs effectively depriving a plaintiff of limited pecuniary means of a forum for vindicating claims." Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 464, 45 P.3d 594 (2002). In Mendez, where Mendez had submitted an affidavit describing his financial circumstances and the cost of arbitration he faced, the court found the cost of arbitration had the practical effect of preventing Mendez from pursuing his claim. Id. at 465, 471, 45 P.3d 594. Here, the only evidence suggesting the Homeowners face financial difficulty are their identical declarations that requiring them to proceed in two forums would be financially ruinous. This presumes their tort claims are not subject to arbitration, a notion we reject infra. Further, the Homeowners did not present evidence of the cost of arbitration as compared to the value of their claim, necessary to satisfy the burden recognized in Mendez. See id. at 465, 45 P.3d 594 (comparing burden of the $2,000 expense up front to resolve a $1,500 dispute). There is insufficient evidence on which to base an argument of substantive unconscionability under Mendez.
¶ 23 We hold the arbitration clause is not substantively unconscionable.

B. Procedural Unconscionability

¶ 24 Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in fine print. Torgerson, 166 Wash.2d at 518-19, 210 P.3d 318; Zuver, 153 Wash.2d at 303, 103 P.3d 753. The three factors should not be applied mechanically without regard to whether in truth a meaningful choice existed. Torgerson, 166 Wash.2d at 518-19, 210 P.3d 318; Zuver, 153 Wash.2d at 303, 103 P.3d 753.
¶ 25 Whether a contract is one of adhesion depends upon an analysis of the following factors: "`(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties.'" Zuver, 153 Wash.2d at 304, 103 P.3d 753 (internal quotation marks omitted) *827 (quoting Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 393, 858 P.2d 245 (1993)). However, an adhesion contract is not necessarily procedurally unconscionable. Adler, 153 Wash.2d at 348, 103 P.3d 773. The key inquiry is whether the party lacked meaningful choice, returning the focus to the procedural unconscionability analysis.[12]See Torgerson, 166 Wash.2d at 519, 210 P.3d 318; Zuver, 153 Wash.2d at 305, 103 P.3d 753.
¶ 26 In Torgerson, the Supreme Court considered whether the limitation on remedies in a real estate contract was unconscionable. 166 Wash.2d at 513, 517, 210 P.3d 318. It noted that the unconscionability doctrine is applicable beyond the Uniform Commercial Code[13] (UCC) context. Id. at 518, 210 P.3d 318 (citing Yakima County, 122 Wash.2d at 391, 858 P.2d 245); see also Baker v. City of Seattle, 79 Wash.2d 198, 201-02, 484 P.2d 405 (1971) (recognizing that the UCC can be applied to common law contract analysis by analogy, especially when evaluating unconscionability). Further, it stated that the Court of Appeals had erred by failing to consider the buyers' unconscionability claims. Torgerson, 166 Wash.2d at 518, 210 P.3d 318. Even though it concluded that these claims were meritless, it explained that whether a transaction is a real estate, consumer, or commercial deal, "the principles of the unconscionability doctrine remain the same." Id. at 522, 210 P.3d 318. However, it declined to use the case as the "launch pad for an analysis of when the doctrine of unconscionability applies to real estate transactions." Id. at 523, 210 P.3d 318. We conclude that unconscionability may be applied in some circumstances involving real estate contracts.
¶ 27 Here, the Homeowners have specifically challenged the arbitration clause for procedural unconscionability, requesting in their eighth cause of action that the court declare the unenforceability of the arbitration clause. The Homeowners' challenge to the validity of the arbitration clause rests on their argument that the PSAs themselves were invalid for procedural unconscionability as contracts of adhesion.
¶ 28 They claimed they were presented with Quadrant's proprietary electronic PSA on a "take it or leave it" basis and were not allowed to modify the arbitration clause in any wayit was a boilerplate provision. In addition, they claimed the sales representatives withheld and concealed information about prior lawsuits against Quadrant, and that Quadrant used high-pressure tactics to force the Homeowners to sign the agreement immediately. Quadrant representatives provided the PSAs electronically to the Homeowners at the initial sales appointment, informing them that their ability to purchase a home required immediate agreement to all of Quadrant's terms.
¶ 29 The Homeowners did not have a chance to review or question the provisions of the PSA before signing. Further, they claim they could not seek advice regarding the PSA's provisions, including the arbitration clause, as they were not given a hard copy to read, question, or take to a lawyer for review until days after signing. Finally, when the Homeowners requested information about other Quadrant homeowners' experiences, Quadrant representatives withheld material information, precluding them from making an informed decision.
¶ 30 The facts alleged relate to the PSA as a whole. The issue of the PSA's procedural unconscionability is a matter reserved for the arbitrator. RCW 7.04A.060(3). The only facts relating specifically to the arbitration clause are that it was a boilerplate provision *828 and could not be deleted from the agreement. This is insufficient to establish procedural unconscionability.
¶ 31 Because the arbitration clause is not substantively or procedurally unconscionable, no ground in law or equity has been established on which to revoke the arbitration clause, so it must be enforced. RCW 7.04A.060(1).

III. Scope of the Arbitration Clause

¶ 32 The parties dispute which of the Homeowners' claims are subject to arbitration, whether WRECO and Weyerhaeuser are bound by the arbitration clause, and whether the children's claims are subject to arbitration.
¶ 33 The arbitration act allocates authority to the courts to decide whether "a controversy is subject to an agreement to arbitrate." RCW 7.04A.060(2). However, the trial court made only a partial determination concerning which claims were subject to the arbitration clause.[14] The Homeowners brought the following causes of action: outrage, fraud, unfair business practices act[15] violation, negligence for personal injury and property damage, negligent misrepresentation, rescission, and breach of warranty. They also requested a declaration of unenforceability of the arbitration clause.

A. Arbitration of Tort Claims

¶ 34 Quadrant contends the broad language of the arbitration clause covers all of the Homeowners' claims. The Homeowners contend they did not intend for the arbitration clause to cover their personal injury and other tort claims. The language of the arbitration provision reads:
Any controversy or claim arising out of or relating to this Agreement, any claimed breach of this Agreement, or any claimed defect relating to the Property, including, without limitation, any claim brought under the [CPA], (but excepting any request by Seller to quiet title to the Property) shall be determined by arbitration commenced in accordance with RCW 7.04[A].060.
Four principles guide our analysis of whether the parties agreed to arbitrate a particular dispute: (1) the duty to arbitrate arises from the contract; (2) a question of arbitrability is a judicial question unless the parties clearly provide otherwise; (3) a court should not reach the underlying merits of the controversy when determining arbitrability; and (4) as a matter of policy, courts favor arbitration of disputes. Mendez, 111 Wash.App. at 455-56, 45 P.3d 594 (quoting Stein v. Geonerco, Inc., 105 Wash.App. 41, 45-46, 17 P.3d 1266 (2001)). If any doubts or questions arise with respect to the scope of the arbitration agreement, the agreement is construed in favor of arbitration, unless the reviewing court is satisfied the agreement cannot be interpreted to cover a particular dispute. Id. at 456, 45 P.3d 594.
¶ 35 This court has stated that an arbitration clause that encompasses any controversy "relating to" a contract is broader than language covering only claims "arising out" of a contract. McClure v. Davis Wright Tremaine, 77 Wash.App. 312, 314, 890 P.2d 466 (1995). The arbitration clause at issue here contains both phrases, suggesting it has a very broad scope. There is no bar in Washington to arbitration of tort claims, as long as the language in the arbitration clause does not preclude it. See, e.g., In re Jean F. Gardner Amended Blind Trust, 117 Wash. App. 235, 235-36, 70 P.3d 168 (2003) (affirming the trial court's decision to compel arbitration of negligence and breach of fiduciary duty claims).
¶ 36 In light of the policy favoring arbitration and the broad language in the clause itself, we read it as requiring arbitration of tort claims.

B. Arbitration of Nonsignatory Children's Claims

¶ 37 A person not a party to an agreement to arbitrate may be bound to the *829 agreement by ordinary principles of contract and agency. Powell v. Sphere Drake Ins. PLC, 97 Wash.App. 890, 892, 988 P.2d 12 (1999). When a nonsignatory plaintiff bases its right to sue on the contract, rather than an independent basis such as a statute or some other theory outside the contract, the provision requiring arbitration must be observed. Id. at 896-97, 988 P.2d 12 (quoting Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Assn., 95 F.3d 400, 405 (6th Cir. 1996)).
¶ 38 There is no distinction in the complaints between the childrens' claims and the parents' claims. Although some of the childrens' claims sound in tort, the source of the duty of care Quadrant owed the Homeowners and their children arises from the sale of the home. The claims relate to the PSA. Accordingly, all of the children's claims are bound by the same scope analysis the trial court will conduct for the parents' claims.[16]

C. Waiver by Parent Corporations

¶ 39 The parties dispute whether WRECO and Weyerhaeuser waived their right to arbitrate by moving for summary judgment. WRECO and Weyerhaeuser argue that their conduct other than their initial motion for summary judgment has been consistent with an intent to pursue arbitration.
¶ 40 A party may waive the right to arbitrate by moving for summary judgment on the merits. See, e.g., Naches Valley Sch. Dist. No. JT3 v. Cruzen, 54 Wash.App. 388, 395-96, 775 P.2d 960 (1989) (where the court held that the teachers' motion for summary judgment on the issue of liability, after the district had moved for summary judgment on the arbitration issue, demonstrated their intent to proceed with the action in court, so they had waived tier right to arbitrate). However, a waiver of arbitration cannot be found if there is conduct suggesting a lack of intention to forego the right to arbitrate. Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc., 28 Wash.App. 59, 62, 621 P.2d 791 (1980).
¶ 41 WRECO and Weyerhaeuser moved for summary judgment on January 11, 2008, alleging they were not properly parties to the lawsuit, as the Homeowners had not pleaded facts that implicated their liability. The court denied both the motion and, on March 17, 2008, the motion for reconsideration. The basis for the summary judgment was not the merits of the issues, but whether WRECO and Weyerhaeuser were proper parties. Before reaching the merits of the Homeowners' claims, there must be a determination of the existence of an agreement to arbitrate and who the parties to that agreement are. We hold that a party may challenge before the court whether they are properly parties to an arbitration agreement, or whether a basis exists to revoke the arbitration agreement, without waiving the substantive right to invoke the arbitration clause if they lose these challenges.
¶ 42 The parties also dispute whether WRECO and Weyerhaeuser may enforce the arbitration clause as nonsignatories. WRECO and Weyerhaeuser may enforce the arbitration clause as nonsignatories, as a person who is not a party to an agreement to arbitrate may be bound to the agreement by ordinary principles of contract and agency. Powell, 97 Wash.App. at 892, 988 P.2d 12; McClure, 77 Wash.App. at 315, 890 P.2d 466 ("[E]ven when it is not explicitly provided for in an arbitration agreement, some nonsignatories can compel arbitration under the doctrine of equitable estoppel or under normal contract and agency principles."). Quadrant is a subsidiary of WRECO, which in turn is a subsidiary of Weyerhaeuser. When the charges against a parent and subsidiary are based on the same facts, as is the case here, and are inherently inseparable, a court may order arbitration of claims against the parent even though the parent is not a party to the arbitration agreement. J.J.Ryan & Sons, Inc. v. Rhone Poulenc Textile, SA, 863 F.2d 315, 320-21 (4th Cir.1988). The claims against Quadrant that the court determines are subject to arbitration *830 are also arbitrable as to WRECO and Weyerhaeuser.
¶ 43 After the court denied their summary judgment motion, WRECO and Weyerhaeuser joined in Quadrant's motion to compel arbitration. This conduct demonstrates they did not intend to waive their right to arbitrate subsequent to the initial summary judgment.
¶ 44 We hold the defendants have not waived the right to arbitrate.
¶ 45 We remand[17] to the trial court for proceedings consistent with this opinion.
WE CONCUR: LAU LINDA and SUSAN AGID, JJ.
NOTES
[1] Initially, the Perezes and Ysteboes filed a class action complaint against Quadrant, WRECO, and Weyerhaeuser. The King County Superior Court consolidated the actions brought by the Sigafooses and Lehtinens into the Perez/Ysteboe class action suit in February 2008.
[2] The facts presented here are those alleged by the plaintiffs, as the trial court has not entered findings.
[3] Ch. 19.86 RCW.
[4] Weyerhaeuser and WRECO moved for reconsideration, which the trial court also denied.
[5] The Homeowners assert that this issue was not briefed to the trial court, so it is unclear why the appellants included it in their proposed order.
[6] Quadrant refers to all three appellants unless otherwise specified.
[7] Washington's rules of statutory construction dictate that we must give plain meaning to the words of the statute and look to other tools for interpretation only if the statute is ambiguous. Cerrillo v. Esparza, 158 Wash.2d 194, 201, 142 P.3d 155 (2006). Only after we determine the statute is ambiguous may we resort to tools of statutory construction like legislative history. Id. at 202, 142 P.3d 155.

Because Washington has adopted the Uniform Arbitration Act, codified in chapter 7.04A RCW, we look to the official comments to the corresponding sections of the Uniform Arbitration Act. RCW 7.04A.901 requires that "[i]n applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." To carry out this mandate, it is appropriate to consider the official comments to the Uniform Arbitration Act, promulgated by the National Conference of Commissioners on Uniform State Laws, without first finding ambiguity in the text. See Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wash.2d 712, 718, 845 P.2d 987 (1993) (citing the official Uniform Commercial Code (UCC) comments in its analysis of UCC § 1-106); Olmsted v. Mulder, 72 Wash.App. 169, 177, 863 P.2d 1355 (1993) (consulting the official UCC comments to understand the purpose of the particular UCC provision at issue).
[8] Washington codifies subsections as (1), (2), and (3) rather than (a), (b), and (c).
[9] 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).
[10] This is consistent with the court's role when presented with a motion to compel arbitration:

On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement, the court shall order the parties to arbitrate if the refusing party does not appear or does not oppose the motion. If the refusing party opposes the motion, the court shall proceed summarily to decide the issue. Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.
RCW 7.04A.070(1) (emphasis added). Under this subsection, the court must order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
[11] The clause reads:

Any controversy or claim arising out of or relating to this Agreement, any claimed breach of this Agreement, or any claimed defect relating to the Property, including, without limitation, any claim brought under the [CPA], (but excepting any request by Seller to quiet title to the Property) shall be determined by arbitration commenced in accordance with RCW 7.04[A].060.
[12] Quadrant contends the trial court erred by relying on procedural unconscionability alone to hold that the arbitration clauses are unenforceable. This argument is inaccurate. The court in Adler specifically declined to consider whether procedural unconscionability alone will support a claim of unconscionability. 153 Wash.2d at 347, 103 P.3d 773. However, the court in Zuver, Adler's companion case, stated that the key inquiry for finding procedural unconscionability is whether the aggrieved party lacked meaningful choice, suggesting that the possibility of invalidating a contract based on procedural unconscionability is not foreclosed. Zuver, 153 Wash.2d at 305, 103 P.3d 753; see also Torgerson, 166 Wash.2d at 519, 210 P.3d 318.
[13] RCW 62A.2-719(3) (dealing with unconscionability); (2) (dealing with failure of essential purpose).
[14] The court's order only stated that "[a]s a matter of law, the arbitration clauses in the plaintiffs' [PSAs] with Quadrant do not apply to plaintiffs' claims regarding subsequent remediation costs due to construction defects."
[15] Ch. 19.86 RCW.
[16] Quadrant contends that the children are not properly named plaintiffs, as they have not appeared by guardian under RCW 4.08.050. It is not clear from the record whether this issue has merit or is before us. Upon remand, the trial court should resolve this issue.
[17] The court's order stated that there were "disputes of fact concerning whether the plaintiffs' [PSA] with Quadrant were negotiated contracts or contracts of adhesion." Notwithstanding that the trial court did not have authority to hear the Homeowners' challenge to the PSA as a whole, the determination that an agreement may be a contract of adhesion is not sufficient to revoke the arbitration agreement. It is merely a step in the determination of procedural unconscionability. Under the statute, the trial court must conduct any necessary proceeding to resolve the questions of fact to determine as a matter of law whether a ground exists in law or equity to revoke the arbitration clause. RCW 7.04A.060(1), (2). Further, consideration of the unconscionability of the PSA, as opposed to strictly the arbitration clause, was error under RCW 7.04A.060(2), which gives courts the authority to consider only the validity of the agreement to arbitrate.